JOHN J. BERRIGAN, as Administrator, etc. Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Court of Appeals, February 12, 1892.*

1 *Railroads. Rules.*—In formulating rules for the government of its employes, a company is bound only to use ordinary care, and to anticipate and guard against such accidents and casualties as may reasonably be forseen by its managers exercising such ordinary care. It is not to be assumed that it can by rules guard against and prevent every injury to them.

2. *Same.*—The court is not warranted in submitting to the jury the question whether the company was at fault in omitting to make and publish a certain rule, in the absence of some proof that such a rule was in operation by other roads, or unless the necessity and propriety of making and promulgating it are sworn to by persons possessing peculiar skill and experience in the business, or unless they are so obvious as to make the question one of common experience and knowledge.

Appeal from judgment of the supreme court, general term, fifth department, affirming judgment entered upon the verdict of a jury at circuit.

*James H. Stevens, Jr.,* for appellant.

*E. A. Nash,* for respondent.

O'BRIEN, J.—On the 16th of October, 1886, the plaintiff's intestate, Edward Berrigan, while coupling cars in the defendant's yard, received an injury from which he subsequently died. He received the injury while making up a train in the defendant's yard at Corning which was known as the Rochester way freight, which ran from Corning to

Rochester.   He was the caboose brakeman, and that part of the train which consisted of the way cars was made up upon what was called siding number two, one of several on the right of the main track going east, and had been so made up for twelve or fifteen years prior to the accident.   The train at this time of the year was made up in the night.   He was engaged in coupling the caboose to the way car ahead of it. There were three loaded freight cars standing on siding number two east of the caboose, and the brakes upon two of them were set.   A freight train came in from the west on the main track and stopped at the station.   The engineer of that train took his locomotive on to the east end of the siding and with the assistance of a brakeman backed down the siding for the purpose of taking out these loaded cars.   In making the coupling the tender of his locomotive struck these loaded cars with such force as to drive them back against the caboose and throw that against the cars ahead, between which and the caboose the deceased was engaged putting in the link for the purpose of making the coupling.   It is not claimed by the plaintiff that there was any neglect on the part of the defendant to furnish the deceased with suitable and safe machinery and appliances or competent and skillful co-workers.   The only neglect which the learned counsel for the plaintiff imputes to the defendant is that it failed to make and promulgate suitable and sufficient rules and regulations for the government of its employees while coupling the cars of this train upon the siding in question.   The only suggestion made by him as to further precaution in this respect by the defendant is that the rule of the company which prescribes a red flag by day and a red light by night upon a crippled or disabled car, to indicate that it is not to be moved or collided with for the reason that men engaged in repairing such a car may be under or about it in such a position as to be unable to save themselves if the car was moved, should have been extended to the cars on this siding when being coupled.   In other words, the

contention of the plaintiff's counsel is that the defendant should have formulated and put in operation a rule which would require a red light by night and a red flag by day to be exhibited from the east end of the caboose or from the end of cars which are being coupled. Judging from the locality where this injury occurred it would seem that danger of collision from engines and moving cars on the siding was as much to be apprehended from the west as from the east, so that the requirements suggested would not be satisfied without exhibiting the danger signal from both ends of cars which were being coupled on this siding. It is easy enough after an accident has occurred to suggest how it might have been prevented. It does not appear that any accident occurred on this siding during the fifteen years before that it was used for the purpose of making up trains.

The defendant was only bound to use ordinary care in formulating rules, and it is not reasonable to proceed upon the assumption that every injury to an employee can be guarded against and prevented by making such rules. It was the duty of the defendant to anticipate and guard against, by rules or otherwise, only such accidents and casualties as might reasonably be foreseen by the managers of the corporation exercising ordinary prudence and care. The question here is whether by the exercise of such prudence and foresight they could have adopted any precautions against injury to the employees than such as they did, or whether there were still others that would suggest themselves to men of ordinary intelligence and vigilance. They had a body of rules embracing every case that was supposed to need regulation. One of these rules provided that when a locomotive was moving backward its signals must be displayed upon the bumpers. It was made the duty of the yardmaster to see that cars were brought together with as slight a jar as possible and coupled with coupling sticks. The engineers were required to use the utmost care in pushing cars into turnouts so as to avoid injuring them or other

property.   Brakemen were required to exercise great care in coupling cars " and as for various causes it is dangerous to expose the hands, arms or person between the same " they were required before coupling to examine the situation so as to act prudently.   The deceased made the coupling alone, though he was not required to do so, but could have waited for the engine and could have had the assistance of some of his co-workers to help him.   He could have used a lamp, but did not though he had a full supply.   There were coupling sticks in the caboose for the use of the deceased, which when used had the effect, as the court below said, of lengthening the arms.   He slept in the caboose and knew and under-stood the situation and the dangers of the business.   Con-sidering the precautions and aids which the deceased might have used to avoid the accident and did not, it would be quite as easy to show that the accident resulted from an omission to use these precautions on his part, as that it was caused by the defendant's neglect to make a rule for the display upon cars that were being coupled of a red light or a red flag.   There is no proof in the case that rules for such a case had ever been promulgated by any other railroad company or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule.

The learned trial judge submitted to the jury the question whether the defendant was at fault in omitting to make and publish such a rule.   This opened to the jury a wide field for speculation and conjecture.   In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads, or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge the court is not warranted in submitting such a question to the jury.   Besides, it affirmatively ap-

peared that the rules in use by the defendant provided in a reasonable way against the occurrence of such an accident so far as such casualties can be prevented by rules.    There was not, we think, sufficient evidence of any neglect of duty on the part of the defendant in this or in any other respect to warrant the submission of the case to the jury.    Corcoran *v.* D., L. & W. R. R. Co., 126 N. Y. 673 ; 38 St. Rep. 251.

The injury which the plaintiff's intestate received must be regarded under settled rules as one of the incidents of an employment of such a hazardous nature.    A co-employee who had charge of an engine backed it up against the loaded cars standing on the siding with such force as to drive them back upon the caboose and by this means the arm of the deceased was crushed.    The engineer may not have used proper care in moving his engine but injury from such a cause is one of the risks which the brakeman took when he entered the defendant's service.    Goodrich *v.* N. Y. C. & H. R. R. R. Co., 116 N. Y. 403 ; 26 St. Rep. 767 ; Byrnes *v.* N. Y. L. E. & W. R. R. Co., 113 N. Y. 251; 22 St. Rep. 936 ; Appel *v.* B., N. Y. & P. R. R. Co., 111 N. Y. 550 ; 20 St. Rep. 90 ; Harvey *v.* N. Y. C. & H. R. R. R. Co., 88 N. Y. 481.

The judgment should be reversed and a new trial granted, costs to abide the event.  .

All concur, except MAYNARD, J., taking no part.