THE ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY v. WILLIAM CARRUTHERS.
No. 7902.

1. RAILROAD EMPLOYEE, INJURED — *Yardmaster and Conductor,
not Negligent.*  Upon the undisputed facts, the acting yard-
master and the conductor, whether treated as fellow servants of
the plaintiff below or as vice-principals of the defendant below,
are not justly chargeable with negligence proximately contributing
to the injury complained of.

2. ———— *System of Signals.*  In the entire absence of testimony
tending to show that any code of rules or system of signals for
the giving of notice or warning of the approach of detached cars
in railroad yards would be feasible or useful, a jury is not justi-
fied in finding that a railroad company is negligent in failing to
prescribe the same.

*Error from Johnson District Court.*

ON October 28, 1890, the defendant in error was in
the service of the plaintiff in error as head brakeman
on a freight-train on its line of railroad between Kan-
sas City, Mo., and Fort Madison, Iowa.   Late in the
afternoon of said day a freight-train was made up in
the yards at Marceline, Mo., to be taken out by Lee
Burgess as conductor, Carruthers as head brakeman,
and a rear brakeman, and Carruthers was directed by
J. C. Hutchinson, acting yardmaster, and Lee Bur-
gess, conductor, to have the engine brought out and
coupled to the train, and told that there was a car to
cut out, but the train would be ready by the time he
got around with the engine.   The conductor was busy
taking the seals of some cars.   Carruthers had the
engine brought out and backed to the front end of the
train consisting of about 24 cars besides the caboose.
The front car, to which the tender of the engine was
to be attached, was a stock-car equipped with a Jan-
ney coupler.   A straight link was held in this coupler

by a pin, and when the engineer backed in response
to the direction of Carruthers, it was found that the
link was too low to couple to the tender, and Carruth-
ers directed the engineer to pull up, which he did,
leaving about 18 inches space between the draw-heads
of the tender and the stock-car.   Carruthers went in
between to take out the straight link so that it might
be replaced with a crooked one, which was necessary
to make the coupling; but for some reason not ex-
plained the pin stuck fast, and he attempted to loosen
it by shaking the link, and while he held the link with
his right hand and the head of the pin with his left, the
stock-car was jostled and propelled forward, and his
right hand was caught between the Janney coupler and
the draw-head of the tender, and it was so badly injured
that it became necessary to amputate the same about
two inches above the wrist joint.   It further appears
that after the conversation between the yardmaster,
the conductor and Carruthers about bringing out the
engine, and after he had left to perform that duty, the
conductor discovered that there were two coal-cars des-
tined for the same place that were not together in the
train, and he asked the yardmaster to have them placed
together, which could only be done by switching, and
the yardmaster directed the switching crew to do this.
It is probable that the car about which the yardmaster
and the conductor spoke to Carruthers had been cut
out before Carruthers attempted to make the coupling,
and that the jostling of the stock-car was caused by
the switching necessary to place the two coal-cars to-
gether.   Carruthers testified that before going in to
move the straight link he looked to the rear of the
train and did not see any switching going on, and he
thought that the train was fully made up, but after he
was hurt he noticed the switch-engine some distance

from the train, and going in the opposite direction. Neither the yardmaster, the conductor, nor any person connected with the switching had any knowledge that Carruthers was between the front car and the tender, and Carruthers had no warning, otherwise than above stated, that any switching was being done which might cause the jostling or propelling forward of the stock-car in front of which he was working. The train was made up in the usual way, but there is some conflict in the evidence whether it was or was not customary to couple the road engine to the train before it was completely made up. The printed rules and regulations for the government of employees on the road and in the yards were not offered in evidence, but so far as appears the company had no established rule, regulation or custom whereby switchmen working in the yards were notified or warned that detached cars were moving upon any of the tracks that might collide with or jostle any standing car or train, except that a rule required that the engine bell should be kept ringing while the engine was in motion. It was admitted that the common law was and is in force in Missouri, and that an employee of a railway company cannot recover against it for an injury suffered by reason of the negligence of a coemployee. On a trial at May term, 1891, Carruthers recovered a judgment against the railroad company for $10,960, and it prosecutes a petition in error to this court for the reversal of said judgment. The opinion herein was filed January 11, 1896.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*A. Smith Devenney,* for defendant in error.

The opinion of the court was delivered by

, MARTIN, C. J. : I. The court instructed the jury that the conductor, engineer, yardmaster, acting yardmaster, yardmen and yard switchmen were all coemployees of the plaintiff, and that if they believed from the evidence that the injury complained of was caused by the negligence or want of ordinary care of any of the coemployees of the plaintiff, then it was their duty to find in favor of the defendant. Yet, in answer to a particular question of fact, the jury stated that the misinformation, orders and instructions respectively given by the conductor and the acting yardmaster to plaintiff concurrently and proximately caused and materially contributed to the plaintiff's injury. The plaintiff below introduced in evidence the decision of the supreme court of Missouri in *Moore v. Railway Co.*, 85 Mo. 588, which defines with some particularity who are fellow servants and who is a vice-principal in that state ; but in our view of the case it is immaterial whether the foregoing instruction of the court was justifiable or not under said decision. The blame was laid by the petition and in the answer of the jury upon the acting yardmaster and the conductor, but we are unable to discover any negligence on their part. They told Carruthers that there was one car to cut out, and that the train would be ready by the time that he got around with the engine. This was doubtless their opinion of the time it would require to accomplish a certain result. After Carruthers had gone on his errand, they found it necessary to adjust two other cars and place them together in the train. We cannot presume that it was improper or unnecessary to make such adjustment for this would be against the evidence. They did not know that Carruthers

would have any difficulty in coupling the front car to the tender, nor, when the cars were being shifted, that he was in any place of danger. Under such circumstances, it would be an extraordinary precaution for the yardmaster or the conductor to search for Carruthers to inform him that further switching was necessary than had been contemplated at the time of the conversation with him. In any event, the judgment being against the railroad company, Carruthers has no reason to complain of the instructions upon the law as to coemployees or fellow servants.

II. It was claimed by the plaintiff below that the railroad company was guilty of negligence in failing to prescribe proper rules and regulations for notice or warning of the movement and approach of detached cars, and that the injury complained of was the result of such negligence; and the jury found that this failure and omission of the company materially contributed to and concurrently and proximately caused said injury. The plaintiff below introduced in evidence the decision in *Reagan v. Railway Co.*, 93 Mo. 348, to show that it may be the duty of a railway company to prescribe rules sufficient for the orderly and safe management of its business, and that whether the company was guilty of negligence in failing to prescribe suitable rules was a question for the jury. In that case, however, a demurrer to the petition was sustained. It is nowhere intimated that the jury could pass upon the question without any evidence upon the subject. In the present case no evidence was given tending to show that any notice of the approach of detached cars in railroad yards or in those at Marceline, Mo., would be useful or practicable. It appears to have been the custom to ring the bells of engines while in motion, and whether any warning of the ap-

proach of detached cars by any known method would have been of any avail for the protection of the plaintiff below under the circumstances we are left entirely to conjecture. No manual signal in the direction of the moving cars could have been seen by him while he was between the stock-car and the engine, and the distance and the noise precluded any efficient use of the voice. Whether in such a place the danger to men working upon, about or between cars would be lessened by the whistling of the locomotive we are not advised. Possibly, where tracks are numerous and several engines are at work in the same yards, such signals would be little or no protection to the men; and, in the entire absence of testimony as to the feasibility or usefulness of any code of rules or system of signals, the jury was not justified in finding that the railroad company was negligent in failing to prescribe the same.

The judgment must be reversed, and the cause remanded for a new trial.

All the Justices concurring.