MARY FRITZ, ET AL., PLAINTIFFS AND APPELLANTS *v.* THE SALT LAKE AND OGDEN GAS AND ELECTRIC LIGHT CO., DEFENDANT AND RESPONDENT.

PERSONAL INJURIES—MASTER AND SERVANT—WHEN MASTER NOT COMPELLED TO FURNISH PRINTED RULES—DUTY OF MASTER IN RESPECT TO MACHINERY FURNISHED—EVIDENCE ESSENTIAL TO MAINTAIN ACTION—SERVANT'S CHOICE OF METHODS HIS OWN RISK—INCREASED HAZARD—ASSUMPTION BY SERVANT.

*When Master not Compelled to Furnish Printed Rules.*

A master is not compelled to furnish employés with printed rules for their government, guidance and safety, when the nature of an employment makes it dangerous, and the dangers incident thereto and growing out of it are of common knowledge, are fully known to and understood by the servant and the safety of others cannot be imperiled by [any act of omission of his in the performance of his duties, and his safety depends wholly upon the degree of skill, care and caution used by himself.

*Duty of Master in Respect to Machinery Furnished.*

A master is only compelled to furnish machinery and appliances reasonably safe and suitable, and such as are in general use in carrying on the kind of business in which the master is engaged.

*Evidence Essential to Maintain Action.*

> In an action for damages for personal injuries, plaintiff cannot maintain his action unless he shows, by some evidence, the negligence of defendant and that such negligence was either the cause of or contributed to the injury.

*Servant's choice of Methods His own Risk.*

> Where there are two or more methods or ways by which a servant may perform his duties, and he voluntarily chooses the most hazardous, knowing it to be such, he does so at his own risk.

*Increased Hazard—Assumption by Servant.*

> Where a servant engaged in a hazardous employment continues work for two weeks after an increase in the hazard, with full knowledge of such increase, he assumes the increased risk.

( Decided February 9th, 1899. )

Appeal from the Third District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action by Mary Fritz et al. against defendant Company for damages for the killing of plaintiffs' decedent. From a judgment of non-suit plaintiffs appeal. *Affirmed.*

*Messrs. Powers, Straup & Lippman,* for appellants.

It is the duty of those using a dangerous agency such as electricity, to use the utmost care to prevent injury to persons. *Giraudi* v. *El. Imp. Co.*, 107 Cal. 120.

The servant has the right to assume that the master has properly exercised this duty.

It was a question for the jury to determine whether deceased exercised care proportionate to the danger and whether a reasonably prudent man with such knowledge would continue his employment. The fact of the danger

arising from the lever may have temporarily escaped the memory of the deceased while engrossed in his work. If so, such forgetfulness would not necessarily be negligence on his part, unless of course he was acting without due care in such forgetfulness. The most prudent man may at times forget and he is not chargeable with negligence unless he was careless in that respect. *Giraudi* v. *El. Imp. Co.*, 107 Cal. 120; *McQuillan* v. *City of Seattle*, 10 Wash. 464 (45 Am. St. Rep. 799); *Van Praag* v. *Gale*, 107 Cal. 438; *Magee* v. *R. R.*, 78 Cal. 430.

The presumption of law is that the deceased exercised due care and before the court was justified in taking the case from the jury the question of deceased's knowledge, assumption of the risk, and contributory negligence should have been so conclusively shown that reasonable minds could not differ on them. *Reese* v. *Morgan Mg. Co.* (Utah), 49 Pac. 824 and cases cited; *Reagan* v. *Boston Electric Light Co.*, 1 Am. Neg. Rep. 78; *Dillon* v. *Allegheny Co. Light Co.*, 1 Am. Neg. Rep. 174; *Willey* v. *Boston Electric Light Co.*, 1 Am. Neg. Rep. 624; *Leavenworth Coal Co.* v. *Ratchford*, 2 Am. Neg. 3. Rep. 54

The servant assumes only such risks as are usual and incident to his employment and such dangers as he knows and appreciates and which are obvious. *Mangum* v. *Bullion-Beck*, (Utah) 50 Pac., 834.

*Messrs. Bennett, Harkness, Howat, Bradley & Richards and Morton Barrows* for respondent.

It was incumbent upon plaintiffs before they were entitled to have the case go to the jury to introduce testimony that fairly tended to show that decedent came to his death through the negligence of the defendant as charged in the complaint. *Dubbins* v. *Brown*, 119 N. Y., 188.

The physical conditions were apparent to decedent, and the dangers arising from these conditions he fully appreciated and understood, and remaining in the service of the defendant under these circumstances, he assumed the risks arising from the conditions as they existed. *Cook* v. *Mining Co.*, 12 Utah, 51, 60-62, and cases cited; *McGlynn* v. *Brodie*, 31 Cal. 378; *Collins* v. *Car Co.*, (N. H.) 38 At., 1047; *Stephenson* v. *Duncan*, 73 Wis. 404; *Way* v. *Ry. Co.*, 40 Ia. 341; *Schrœder* v. *Car Co.*, 56 Mich. 132; *Shaw* v. *Sheldon*, 103 N. Y. 667; *Sullivan* v. *Mfg. Co.*, 113 Mass. 396; *Railroad Co.* v. *Stricker*, 51 Md. 47; *Sweet* v. *Ohio Coal Co.*, 78 Wis. 127; *Hickey* v. *Taaffe*, 105 N. Y. 26.

His duties did not require him to go in such close proximity to the lever as to be in danger and he should have avoided it if it was dangerous. *Fowler* v. *P. V. Coal Co.* 52 Pac. 594 and cases cited.

### STATEMENT OF FACTS.

This action was brought by the plaintiffs, Mary Fritz and August B. Fritz, heirs at-law of Edward Fritz who was killed August 16, 1896, while he was in the service of and at work for the defendant in its electric light plant. The complaint in substance alleges that the death of the deceased was caused by the negligence of defendant by reason of its failure and omission to promulgate and publish rules and regulations for the government, direction and safety of its employés when working about the dynamos and electric machinery; and by permitting a certain dynamo or electrical machine to remain exposed, unguarded and unprotected by insulation or by non-conductors, or otherwise, and permitting an iron clutch or lever to remain within about twenty-four inches of the dynamo and not covered with wood or otherwise guarded

or insulated.   The answer denies the allegations of negligence on the part of defendant and alleges that deceased assumed all the risks, and whatever injury he received was through his own negligence directly contributing to the injury.   At the conclusion of the testimony for plaintiff the court, on motion of defendant, granted a non-suit and directed a verdict for defendant.   The order granting a non-suit is assigned as error, and is the only question in the case.

The facts as shown by the record, are as follows: The decedent at the time of his death was, and for nearly four years prior thereto had been in the employ of defendant, working in its electric lighting plant, oiling and taking care of the dynamos, which required his constant care and attention, as each machine had to be attended to every fifteen or twenty minutes.   According to the description furnished by the record, a dynamo is nearly five feet high and covers a space of about five feet in length by four feet in width.   A part of the machinery, which we shall designate as the lower magnets, is about two feet above the floor on which it rests.   Another part of the machine is known as the armature and brushes which is about two feet above the lower magnets.   And the upper part of the machine which we shall designate as the upper magnets, is about eight inches above the armature.   The parts thus mentioned are highly charged and impregnated with electricity when the machine is in motion generating the same.   The risks of the employment consisted mainly of the danger of a person while in the act of oiling and caring for the machinery coming in contact with some part of the dynamo charged with electricity with his hand or other member of his body, and at the same time coming in contact with some other part of the machine or

other metalic substance with some other member or portion of his body, and thereby causing a "short circuit" or "grounding the current" through his body.

About two weeks prior to the accident the defendant temporarily moved a dynamo from another part of the building, placed and left it standing near a live machine or dynamo, that is one in motion generating and charged with electricity, one that was oiled and cared for by the decedent. There was a movable iron clutch or lever attached to this dynamo so moved, which clutch was used for starting and stopping the machine. The end of this clutch or lever was insulated and protected with wood, and when pulled or pushed towards the live dynamo came within about eighteen or twenty inches of it, leaving a space of about twenty-six inches between the live dynamo and that part of the clutch or lever not insulated and protected with wood. When the lever was pushed or pulled in the opposite direction from the live dynamo it was practically out of reach of it. The evidence does not disclose the position of the lever at the time of the accident. The decedent when oiling and caring for the dynamo could either pass between this clutch or lever and machine to which it was attached and the live dynamo, or he could pass around on the opposite side of this live dynamo from the lever and thereby avoid all danger of coming in contact with the dynamo and the lever at the same time. The duties of the decedent did not require him to pass between the clutch and live dynamo.

The decedent was last seen alive on the night of the accident between half-past nine and ten o'clock, and about forty minutes later was found dead lying near the lever above mentioned and a live dynamo. His hands showed signs of an electric burn, and there was one just above the knee on the outside of the left leg. No one

saw, nor was there anyone near him when the fatal accident occurred. The machinery was of the same kind in general use in electric light plants, and was in good condition and running order at the time of the accident. The decedent was forty-two years of age, bright, intelligent, capable and thoroughly competent to understand, and did understand and comprehend the dangers growing out of, and incident to the employment, and the operating of these machines, and had been heard to express himself with regard to the danger of coming in contact with anything that would ground the current, or make a short circuit through a person's body.

McCARTY, *District Judge*, after stating the facts, delivered the opinion of the court.

Plaintiffs contend that it was the duty of the defendant to furnish its employés with printed rules for their government, guidance and safety, and that its failure to do so was negligence.

There are certain kinds of employment where, on account of their nature, it becomes necessary, and is the duty of the master to promulgate and publish rules and regulations for the guidance and government and safety of its employés. Especially is this true where a large number of persons are at work and the danger or safety of the employment depends largely upon all the employés performing their duties promptly at stated times and in a given manner. But we do not understand the rules to apply to cases such as the one in question where the very nature of the employment makes it dangerous, and the dangers incident thereto, and growing out of it are of common knowledge and are fully known to and understood by the servant, and the safety of others cannot be imperiled in any way by any act or omission of his in the performance

of his duties, and his safety depends wholly upon the degree of skill, care and caution used by himself, and not upon that of his fellow servants. In this case the decedent, as shown by the evidence, thoroughly understood and appreciated the dangers incident and growing out of the employment. His work kept him in another part of the plant separate and apart from his fellow servants who worked on the same shift as himself, and whose duties were separate and distinct from his. And it is apparent, as shown by the record, his safety did not in anywise depend on the knowledge and skill of his co-employés, nor on the degree of care and caution used by them. In fact it is not contended that the accident was due wholly or in part to any act or omission of his fellow servants, therefore, the defendant cannot be held liable in this case on account of its failure to furnish its employés with printed rules, as the record shows conclusively that such failure did not in any way contribute to the accident. *Atchinson T. & S. F. Ry. Co.* v. *Carruthers,* ( Kan. ) 43 Pac. Rep. 230.

It is further contended that defendant's failure to guard, protect and insulate the dynamos was negligence.

The machinery and appliances used by defendant in its electric light plant before and at the time of the accident were of the kind commonly and ordinarily used in other electric light plants, and the manner and methods of running and operating them were the same. The rule has become elementary that where a master has furnished the servant with machinery and appliances reasonably safe and suitable and such as are in general use for carrying on the same kind of business as that in which the master is engaged, and the servant is injured without any fault of the master, the master cannot be held liable because he failed to make use of some attachment or special device that might have rendered the operating of the machinery

less dangerous and the accident thereby might have been avoided. In the case of *Titus* v. *Railway Co.*; 136 Pa. St. 618, which is a well considered case, the court said: "To show that a practice is dangerous does not prove it to be negligent. Some employments are essentially hazardous, and it by no means follows that an employer is liable because a particular accident might have been prevented by some special device or precaution not in common use. All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for in regard to the style of the implement, or nature of the mode of performance of any work, reasonable safety means according to the usages, habits and ordinary risks of the business.

Absolute safety is unattainable and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held to a higher degree of skill than the fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man. The test of negligence as to employers is the same; and, however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual way commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall in effect dictate the customs or control of the business of a community." Bailey Mast. Liab. p. 145; *Miss. River Logging Co.* v. *Scheider*, 20 C. C. A. 390

and cases cited; *E. S. Higgins Carpet Co.* v. *O'Keefe,* 25 C. C. A. 220; *Gilbert* v. *Guild,* 144 Mass. 601; *Schrœder* v. *Car Co.* 56 Mich. 132; *Nutt* v. *Southern Pac. Ry. Co.* 35 Pac. 653; *Washington & G. R. Co.* v. *McDade,* 135 U. S. 554 and cases cited.

Further citation of authorities in support of this doctrine is unnecessary.

The only remaining question for our consideration is, was there any evidence that tended to prove negligence on the part of the defendant, by reason of the clutch or lever having been left near a live dynamo? Just how the decedent came in contact with the dynamo and caused the fatal current to pass through him is a matter of speculation and conjecture. Counsel for plaintiffs insist that there was some evidence tending to show that decedent came in contact with the live dynamo with his hands and at the same time came in contact with the clutch or lever with his left leg and thereby grounded the current with fatal results. And that this question, together with the other questions we have considered, should have been submitted to the jury. We have made a critical examination of the record and fail to find any evidence whatever that supports this theory any more than it does the theory contended for by defendant, viz: that decedent met his death by coming in contact with the upper magnet with his hands, and at the same time coming in contact with the armature, brushes, or lower magnet with his leg. There is no evidence that tends to show the position of the clutch or lever before or at the time of the accident; for aught appears in the record it might have been out of reach of the live dynamo. To entitle the plaintiffs to recover it was incumbent upon them to establish the negligence of defendant by some evidence, and that such negligence was either the cause of, or contributed to the accident.

Negligence cannot be presumed, nor the question thereof left to conjecture. In the case of *Sorenson* v. *Monasha Paper & Pulp Co.*, 56 Wis. 338, the learned court tersely, and, we think, correctly, stated the rule as follows:

"Judicial determination must rest upon facts, and legal liability must be determined by the law in application to the facts. This rule will not exclude circumstantial evidence, for such evidence is often the strongest; but such evidence, after all, must establish facts. When liability depends upon carelessness or fault of a person or his agents, the right of recovery depends upon the same being clearly shown by competent evidence; and it is incumbent upon such a plaintiff to furnish such evidence to show how and why the accident occurred, some fact or facts by which it can be determined by the jury, and not left entirely to conjecture, guess or random judgment, upon mere supposition, without a single fact shown." *Sherman* v. *Menominee River Lumber Co.*, 77 Wis. 22; *Trapnell* v. *City of Red Oak Junction*, 76 Iowa, 744.

There are other reasons why a recovery cannot be had in this case. The decedent's duties did not require him to pass between the lever mentioned and the live dynamo, nor was it necessary for him to do so. He could have oiled and cared for the dynamo on the opposite side from the lever and thereby avoided all danger of coming in contact with both at the same time. When there are two or more methods or ways by which a servant may perform his duties and he voluntarily chooses the most hazardous, knowing it to be such, he does so at his own risk. Bailey Mast. Liab. p. 169; *St. Louis Bolt & Iron Co.* v. *Brennan*, 20 Ill. App. 555; *Same* v. *Burk*, 12 Ill. App. 369; *Cook* v. *Mining Co.*, 12 Utah, 51; *Colo. Coal & Iron Co.* v. *Carpita*, 40 Pac. Rep. 248; *Richardson* v. *Carbon Hill Coal Co.*, 32 Pac. Rep. 1012; *Lewis* v. *Simpson*, 29 Pac. Rep. 207.

For two weeks after this lever and the machine to which it was attached were left near the dynamo, the decedent fully realizing the increased dangers and risks, if any, caused thereby, continued to work there as usual without complaint or objection. By thus continuing in the employment he assumed the increased risks, if any, that were created by the position of this lever. *Southern Pac. Co.* v. *Seley*, 152 U. S. 145 and cases cited; *McCharles* v. *Mining Co.*, 10 Utah, 470; *American Dredge Co.* v. *Wells*, 28 C. C. A. 441.

We are of the opinion that the non-suit was properly granted. The judgment is affirmed with costs.

BARTCH, J. and BASKIN, J. concur.