PETER ZEBROWSKI, PLAINTIFF IN ERROR, v. WARNER SUGAR REFINING COMPANY, DEFENDANT IN ERROR.

Argued March 7, 1912—Decided June 19, 1912.

1. No duty to make rules is imposed upon the employer for the safety of his employes in the conduct of his business where the business is neither complex nor extrahazardous, nor where the dangers incident to it are obvious, or of common knowledge, and are understood by the servants.

2. Whether a particular rule should be enacted should not be left to the jury arbitrarily to find, but there should be proof that the practice of promulgating such rules in similar manufactories under similar conditions is general. In the absence of proof that it is the general usage of other employers engaged in similar lines of business to adopt rules claimed to be necessary, and that they would be practicable and useful, a master will not be charged with negligence for failure to make them.

3. Where the danger is one that a servant should have reasonably anticipated as a result of the practices customarily carried on

and participated in by himself, and their dangerous character one that he must have appreciated, whether such danger arose from a lack of rules or a defect in the system, it was a risk known to him which he assumed.

On error to the Supreme Court.

For the plaintiff in error, *George D. Hendrickson* and *Merrill Lane.*

For the defendant in error, *Marshall Van Winkle.*

The opinion of the court was delivered by

VOORHEES, J. The trial resulted in a judgment of nonsuit, and the propriety of the court's action in ordering it forms the basis of the argument of the plaintiff in error.

The plaintiff, about thirty years of age, a Pole, speaking and understanding English imperfectly, having been in this country but three years, had been employed by the defendant in its sugar refinery to wash bags, for about ten months before the happening of the accident which resulted in the injuries for which the suit was brought, and during which time he had been accustomed to perform the same kind of service as that which he was doing on the day of the accident. His foreman and fellow-workmen were Polish.

On April 3d, 1910, the plaintiff was working on the fourth floor of the defendant's building picking bags, when the foreman ordered him to go to the eighth floor for a truck and to bring it down on the elevator. He went up by the stairway, found the truck, took it to the elevator, which was in a position even with the floor, with the guard gate up as it should be, and stepped into the car, drawing the truck after him, when the elevator began to move upward, the gate pinching his hands, and he holding to the arms of the truck, was forced forward with his head down, while his feet went up, his head going through the opening in the safety gate. He was pulled up to the ninth floor, between the wall and the car, causing severe and painful injuries and mutilating him seriously and permanently.

The declaration avers that the elevator was a dangerous agency, and that it was the duty of the master to warn and instruct the servant, and further, that the master failed to adopt rules and a safe system of operation.

It was a Reidy standard elevator, put in motion, stopped and controlled by means of three ropes, one to move it up, another to move it down, and a third, or centre rope, called a check rope, which would stop its movement. A further use of the third rope was to hold the elevator in any desired position by twisting the third rope around a catch or shoulder within the car.

The plaintiff's insistence is that there was no proper scheme of operation or code of rules promulgated for the guidance of the employes in the operation of the elevator, and that as elevators are dangerous machines, it was the duty of the defendant to have one man detailed specially to run the car.

The point is further made that there was an entire absence of system governing its use. It will not be denied that an employer may conduct his business in his own way, although another method might be less hazardous. No duty to make rules arises where the business is neither complex nor extra-hazardous, nor where the dangers incident to it are obvious, or of common knowledge and are understood by the servants, and where the practice pursued by the employes renders rules unnecessary.

The question has usually arisen and been decided in railroad cases where the business is admittedly dangerous and complicated, and, therefore, rules are considered necessary in order to afford reasonable protection against the dangers arising to employes to and from each other in the performance of their several and respective reciprocal duties.

In *Voss* v. *Delaware, Lackawanna and Western Railroad,* 33 *Vroom* 59, the Supreme Court said: "A general averment in the declaration of the failure to exercise reasonable care to make and establish or enforce rules and regulations furnishes no basis of liability against the master. No authorities have been cited to sustain such a proposition, and it cannot be

founded upon any sound reasoning. * * * The master is not bound to make any such rule, but is entitled to have his liability to his servant for the dangers of the work determined by the application of the general principles of law, regulating and governing the relation of master and servant, to each particular cause or case of injury as it arises, and to the system or manner in which his business is operated or conducted."

The principle requiring a code of rules has never been applied except when the nature of the business requires it. The rule is thus stated in 26 *Cyc.* 1157, where the authorities are collected: "Where a master is engaged in a complex or dangerous business he must adopt and promulgate such rules and regulations for the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection to them. But no duty to adopt rules is imposed upon the master where the business is neither complex nor extrahazardous, where the dangers incident to the work are obvious, or of common knowledge and fully understood by the servants, or where the practice actually in force renders a rule unnecessary, nor is the master bound to make rules as to how his servants shall conduct themselves outside the scope of their employment, nor as to how business shall be carried on or any act done which is not carried on or done with his knowledge and permission."

There was no proof in this case that the business was of the complicated character which the law obligates the employer to guard by a scheme of laws. The only evidence on the point was that between one hundred and fifty and two hundred men were employed, and that an elevator must be regarded as dangerous.

It is not perceived how from the mere count of the employes an inference of a dangerous and complicated business is raised; nor from the presence in a manufacturing plant of a single dangerous agency, a similar situation can be predicated. The plaintiff in error does not stop here, but contends that the specific duty cast upon the master under these cir-

cumstances was to employ a man specially to operate the elevator.

The plaintiff produced a witness, a builder of elevators, and who had been in the business of installing them in large factories, who testified that "the general custom in large factories is to have one man to run the elevators—that is, in large factories where they have a good many men." The following answer given by him: "The custom is to have one man operate it [elevator] and give the instructions, so far as I can when I put them up. Have been called on this week to give the instructions," was properly stricken out, because it related solely to his own business, and not to customary usage. He also gave further testimony, in effect, that he did not know that there was any special danger in running an elevator of this kind to the initiated—to the man who knows how to handle it. That it was not a complicated operation, but simple, and that a man of ordinary intelligence would learn how to run and operate it in a day or two.

The foregoing is the only evidence in the case bearing upon the question of how others ran similar elevators and it falls short of showing a general usage. It did not necessarily concern a rule of operation to guard against dangers. He had developed the fact that it prevailed in large factories where many men are employed. It was not at all predicated upon the safety of the operation of the appliance, but as well might refer to economy of operation, for rules are intended for economic efficiency, as well as for lessening the risks of servants. *Sutherland* v. *Troy & B. R. Co.,* 125 N. Y. 737.

Whether a particular rule should be enacted should not be left to the jury arbitrarily to find, but there should be proof that the practice of promulgating such rules in similar manufactories under similar conditions is general. In the absence of proof that it is the general usage of other employers, engaged in similar lines of business, to adopt rules claimed to be necessary, and that they would be practicable and useful, a master will not be charged with negligence for failure to make them. See 20 *Am. & Eng. Encycl. L.* 101 *et seq.*

What standard was proved by way of system to which it was incumbent upon the defendant to conform? It cannot be asserted that in a case like this, each jury may say what they deem to be a proper rule, and thus arbitrarily direct the conduct of each manufacturing plant under regulations not general, but special, in their application.

Such a practice was denied with regard to the construction of railway station platforms in *Feil* v. *West Jersey and Seashore Railroad Co.*, 48 *Vroom* 502, and to the angle at which barriers to protect travelers on a highway should be placed to warn them of repairs being made in *Halm* v. *Freeholders*, 49 *Id.* 712, and as to the height of a car step in *Kingsley* v. *Delaware, Lackawanna and Western Railroad Co.*, 52 *Id.* 536. Juries may decide whether the ordinary standard has been attained, but they may not impose a standard of their own.

In *Ford* v. *Lake S. & M. S. R. Co.*, 124 *N. Y.* 493, cited by the plaintiffs, it was proven that the rule which it was alleged should have been made existed on all other railroad companies. In *Abel* v. *D. & H. Canal Co.*, 128 *Id.* 662, an exception was taken to a charge which proceeded as follows: "I think rules might have been suggested not adopted by any company. You have a right to consider whether some rule which occurs to you even though no company has adopted it, would have been a better rule and given better protection and such a one as ought to have been adopted and maintained."

Upon review, the Court of Appeals said: "If the charge is to be construed as leaving it to the jury to determine, irrespective of evidence, what rules ought to have been adopted for the safety of the repairmen and to find the one way or the other on the question of the defendant's negligence in conformity with a conclusion so reached, the charge was undoubtedly erroneous."

So, in *Atchison, T. & S. F. R. Co.* v. *Carruthers*, 56 *Kan.* 309, the court held that in the absence of any testimony as to possibility or usefulness of a code of rules, a jury is not justifiable in finding the company negligent in failing to promulgate such system.

In *Berrigan* v. *New York, Lake Erie and Western Railroad*, 131 *N. Y.* 582, the rule is thus stated: "There is no proof in the case that rules for such a case had ever been promulgated by any other railroad company, or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule. The learned trial judge submitted to the jury the question whether the defendant was at fault in omitting to make and publish such a rule. This opened to the jury a wide field for speculation and conjecture. In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads, or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury." See, also, *Morgan* v. *Hudson River Ore and Iron Co.*, 133 *Id.* 666, where the court said: "The recovery was based entirely on the absence of rules. It was not suggested at the trial, nor is it on this appeal, what particular rule the defendant could have adopted that would have been likely to prevent the accident. No evidence was given that any rule is in use in business of a similar character by other corporations of the same class carrying on like operations, nor was there any evidence by experts or other witnesses to show that any rule was necessary or practicable in such cases. It was left to the jury to say whether or not it was a case for rules, and if so, what particular rule should have been adopted. We know nothing with respect to the views entertained by the jury on these questions, except so far as they are indicated by their verdict for the plaintiff. It is not probable that they concluded that any definite rule should have been promulgated, but were content to hold that, as the plaintiff was injured, the defendant ought in some way to have prevented it, or in case it did not respond to him in damages. Almost every conceivable injury that a servant receives in the course of his employment may in this way be

submitted to a jury, and with the same result. * * * Even if it could be shown, after the accident occurred, that it might have been prevented by adopting and enforcing some suitable rule, that would constitute no proper test of liability. The failure to adopt rules is not proof of negligence, unless it appears from the nature of the business in which the servant is engaged that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity of such precautions."

The plaintiff has failed to bring himself within the principle claimed because he has not established by proof that the business was complex and extrahazardous; and that the special regulation insisted upon was by general custom adopted by employes in like lines of manufacture.

But it is not perceived how, if such proof had in fact been made, it would have been possible for the plaintiff to recover in this case. The plaintiff had acquired knowledge of running the elevator. The accident happened because another employe, on another floor, wishing to make use of it, reached into the car and pulled the rope, causing the elevator to start upward. He admitted that the unannounced starting of the car, by other workmen, was a frequent occurrence, and that he was not only familiar with it, but had so started it himself. He furthermore knew that this was customary. He testified that if anybody wanted it, they took it. That "anybody could take the elevator and go up to the second or fourth floor, or any floor, and get off, and then soon another could come after and that is all. I saw how the others did, then I put my work on the elevator and pulled it up." "Yes, often happened when we was on the elevator and working on it and somebody from below started the elevator. I would come with my work down with the elevator and suddenly someone else wanted it." Whether the plaintiff knew of the risk that the elevator might be started by an employe in another floor, when he first entered the employment, is not material, for he had acquired that knowledge during his term of service, and had learned that it was customary for an employe, wishing to make use of this agency, to reach in over the gate, pull the

rope and draw the elevator to the floor where he was, and that the one who first did it acquired the control of it. · He had done that himself, and so he knew, from his observation and practice, acquired during his service, of the danger, yet he continued in his employment without protest, and he must therefore be held thereby to have assumed this obvious risk. *Johnson* v. *Devoe Snuff Co.*, 33 *Vroom* 417.

It is urged that the doctrine of obvious risk is inapplicable, ˙because it is subject to the qualification that the master must' take proper care to guard the servant from unnecessary₁ hazards. Citing *Abel* v. *D. & H. Canal Co.*, *supra;* *Pakusewski* v. *Ringwood Company*, 52 *Vroom* 552, and *Zellers* v. *De Laney,* 51 *Id.* 452. The rule is correctly stated in the last case thus: "The known absence of safeguards or precaution cannot prevent a recovery, where the danger that renders them necessary is unknown to the injured servant." The danger that the elevator was subject to movement by a fellow-servant in another floor was one that he should have reasonably anticipated as a result of the practices customarily carried on and participated in by himself, and its dangerous character one that he must have appreciated. If the danger arose from a lack of rules, or a defect in the system, it was a risk, known to⁰ him, which he assumed.

The judgment under review will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, TREACY, JJ.    13.

*For reversal*—KALISCH, WHITE, JJ.    2.