MEMPHIS POWER & LIGHT CO., Plaintiff in Error, v. EUGENE TELGHMAN, by next friend, Defendant in Error.

Wesern Section. July 30, 1929.

Petition for Certiorari denied by Supreme Court, May 8, 1930.

Roane Waring and Allen Cox, Jr., of Memphis, for plaintiff in error.

Clyde Koen, of Memphis, for defendant in error.

SENTER, J. This is a suit brought by L. B. Telghman, as the next friend for his minor son, Eugene Telghman, against the Memphis Power & Light Company, to recover damages for the alleged personal injuries sustained by Eugene Telghman while in the employ of the Memphis Power & Light Company, by coming in contact with a high powered wire. The parties will be referred to as in the court below, and Eugene Telghman will be referred to as the plaintiff.

The plaintiff at the age of about sixteen years procured employment from the defendant under the assumed name of Eugene Steele, and stated his age at the time to be eighteen years. He entered the employment of the defendant on January 5, 1926, as a helper to the linemen. This employment did not require him to go on the poles, but his work was on the ground. After some months he was promoted to the position of second class lineman. He received his injuries on July 22, 1927. He was unusually large for his age, and had the appearance of being about eighteen years of age at the time he entered the employment of the defendant. At the time he received his injuries he had climbed one of the poles of the defendant by direction of the foreman in charge of the work. He knew the nature of the work at the time he climbed the pole, and had had considerable experience in the work that he was directed to do. The foreman directed him to obtain the rubber gloves furnished by the defendant to employees, and to climb the pole to adjust a high voltage wire on the pole. In performing this service it became necessary for him to turn a nut to release the wire highly charged. He first

attempted to turn the nut with pliers, but was unable to do so and he then took his wrench and applied it to the nut. He was holding the wrench in his right hand, and some part of his body came in contact with the highly charged electric wire carrying a heavy voltage. He was rendered unconscious for ten or fifteen minutes and received a very severe burn between the forefinger and the thumb. He was fastened to the pole with a safety belt, and when he was released and regained consciousness he was taken promptly to the hospital where his injuries were treated. He was confined to the hospital for seven weeks, and suffered considerable pain.

The defendant paid all medical and hospital bills and also the regular wages to plaintiff during the time he was disabled from work, and after his recovery he was again given employment by the defendant, but of a lighter character.

It was the theory of the plaintiff in the trial of the case, and as set forth in the declaration, that he was not employed as a first class lineman, and that the service that he was directed to perform at the time he received the injuries was that of a first class lineman, and not of a second class lineman; that he was young and inexperienced in that particular kind of work; that the service that he was directed to perform was very dangerous, especially for a boy of his age and experience; that he did not realize the danger and went up onto the pole by direction of the foreman, and that it was negligence upon the part of the defendant to direct him to climb the pole and to disconnect the highly charged electric wire carrying heavy voltage. It is also the theory of the plaintiff that in handling wires of that type and carrying that voltage of current, it is necessary to use heavy rubber gloves in handling wires; that the rubber gloves used by the employees are furnished by the defendant; that in order to handle the wires with safety the rubber gloves must be in good condition, free from holes and worn places; that these rubber gloves are presumed to be regularly tested by the defendant by a special method of inspection, and that when the gloves are properly inspected by this method any holes or worn places in the gloves are detected; that the rubber gloves furnished to the plaintiff by defendant at the time plaintiff was directed to climb the pole to adjust the wire were defective, and that because of the worn condition of the gloves, either by a hole in the gloves or worn thin from use between the forefinger and thumb of the gloves where the wrench was held by plaintiff, that when the wrench came in contact with the highly charged wire, the current passed through the glove and came in contact with plaintiff's hand where he was holding the wrench, and that the current from the highly charged wire where his hand came in contact with it was the cause of the injury.

The defendant, by its plea, denied that it was guilty of any acts of negligence resulting in the injuries sustained by plaintiff. The

jury returned a verdict in favor of the plaintiff for the sum of $1500, and judgment was rendered by the court on the verdict for that amount. The defendant made a motion for a new trial. This motion was overruled and disallowed. From the action of the court in overruling its motion for a new trial and rendering judgment against it and in favor of plaintiff, the defendant prayed and was granted an appeal in the nature of a writ of error to this court, and the appeal has been duly perfected, and errors assigned.

The assignments of error are numerous and are directed to certain portions of the general charge of the court to the jury, and also to the failure of the court to give in charge certain special requests submitted by the defendant.

By the first assignment it is said that the court erred in submitting to the jury the question of the negligence of the defendant in failing to inspect and discover defect in the gloves furnished him, because there was no evidence that would warrant a finding that the gloves were defective; or what the defect was; or when the gloves became defective; or what opportunity the defendant had by the exercise of reasonable and ordinary care to discover the defect, or how long the defect, if any, had been in the gloves. Under this assignment it is contended that there is no evidence in the record upon which the jury could determine any of these facts, and that it was, therefore, error to submit this question to the jury.

We do not think this assignment can be sustained. There was evidence to the effect that if the rubber gloves are in proper condition and free from defects, that it affords insulation, and will protect the user against danger from wires carrying a high voltage of electrical current. It is clear from the evidence that the burn from electrical current was between the thumb and forefinger of the hand in which the wrench was held by plaintiff at the time he was engaged in trying to turn the nut. It was also shown that where the flesh comes in contact with a live wire that the point of contact is indicated by the burn. Upon these facts shown by the evidence, the jury could well infer that the gloves were defective, and that the glove on that hand either had a hole in it or was worn so thin that it afforded no protection against a highly charged wire carrying a heavy voltage of electrical current. The nature of the burn and the location of the burn on the hand affords abundant evidence that the point of contact with the charged wire was at the point of the burn on the hand. The hand was covered by the rubber glove. The proof shows that if the glove had been in proper condition the burn could not have resulted. It was also shown that the defendant maintained a system for the testing of the rubber gloves used by its employees, and a special apparatus for that purpose. It does not appear how long this particular pair of rubber gloves had been in use. However, it does appear that the last inspection and test of this pair of gloves

by the defendant was about two weeks prior to the time the plaintiff received his injuries. It also appears that there is necessity for the proper testing and inspection of the rubber gloves used by the employees of the defendant to determine if the gloves should have any small holes not detected by the eye, or any defective or worn places that would permit the current to pass through. The method of making this test is shown by the evidence. It also appears that employees, in using rubber gloves, may, to some extent, discover holes in the gloves by blowing into them and observing to see if there is an escape of air through any hole, but it is admitted that this is not a complete test, and is worth but very little. The defendant clearly recognized the importance of having these rubber gloves tested and maintained a regular system of inspection and testing. The record does not disclose just how often these tests are generally made by the defendant, but it does appear that the gloves which plaintiff was furnished on the day he received his injury had not been tested for a period of about two weeks. It was clearly the duty of the defendant to furnish its employees with safe tools and apparatus. : If the defendant undertakes to furnish the rubber gloves to be used by its employees in handling these highly dangerous and heavily charged electric wires, it is the duty of the defendant to use reasonable care and caution to see that the gloves are sufficient for the purposes for which they are intended to be used. Reasonable care is the degree of care required. However, what would amount to reasonable care in the inspection of some working tools would not necessarily be reasonable care in the inspection of the rubber gloves, since the care used should be commensurate with the danger.

The second assignment challenges the correctness of the following portion of the general charge to the jury:

"The defendant, Memphis Power & Light Company, the master in this case, was required by the law, and I so charge you, to use all reasonable and proper tests to see that the tools and appliances furnished the servant were in good order, were safe to be used, and this duty upon the part of the master, is one that is not confined to occasional inspection, but must be a regular inspection, and such inspection as would make it reasonably safe and sure that the tools and appliances furnished by the master to the employee are safe and suitable for the purpose. That is again the degree of ordinary care and caution to be used and exercised in a manner commensurate with the dangers of the employment. So it is the duty of the master, to use these reasonable tests and all proper and reasonable methods to discover defects in the tools and appliances furnished, and if the master has done this, then he has complied with his duty under the law and if it has failed to do so, it has not complied with its duty under the law."

Appellant, by the second assignment of error, contends that the above excerpt from the charge is erroneous for the reasons, (1) because the court instructed the jury as a matter of law that it is the duty of the defendant to use all reasonable and proper tests to see that tools and appliances were safe and in good order; it being contended that when the court used the word "all" reasonable and proper tests, that it was stating the rule too strongly. The objection seems to be largely on the use of the word "all." It is further contended that this portion of the charge was inaccurate and prejudicial error to the defendant because of the language of the court where the court says that as a matter of law the defendant's duty was not confined "to an occasional inspection, but must be a regular inspection as would make it reasonably safe and sure" that the tools were safe and suitable; and because the court charged that as a matter of law the defendant is required to use "all proper and reasonable methods to discover defects" in tools and appliances.

This assignment will be considered in connection with the third and fourth assignment. The third assignment is directed to the following excerpt taken from the charge of the court:

"Now, the court charges you as a matter of law that the defendant was required to make tests of these gloves, to make these tests regularly and to use all necessary care and caution to see that the gloves furnished the plaintiff to do this particular work was in a reasonably safe and sound condition with which to do that work with safety, and if the master has failed in this particular and this has been the cause of the accident, then the defendant would be guilty of negligence, and it would be your duty to return a verdict in favor of the defendant."

Appellant bases the criticism to this portion of the charge on the same grounds as set out under the second assignment. The fourth assignment is directed to the following excerpt from the court's charge:

"If on the other hand, you find the master did comply with the duty cast upon him by law, that he did make these tests, that the gloves were in good order and that he had done all that a reasonably careful and prudent person could do to see that those gloves were safe for the particular work in which the plaintiff and other men on the line were engaged, then it had discharged its duty, and if the proof in this case fails to show by the preponderance of the evidence, that the master was guilty of negligence in this particular, then the plaintiff could not recover and your verdict should be for the defendant."

Under this assignment it is contended by appellant that it was error in that it required the defendant, before it would be entitled to a verdict, to show that it made the tests; that the gloves were in good order; that it had done all that a reasonably careful and

prudent person could do to see that the gloves were safe, and that it had discharged its duty. Stress is laid upon that language of the above quoted exerpt wherein the court says: "that the gloves were in good order," in speaking of the duty of the defendant in the matter of furnishing safe appliances to employees. It is said that this language makes the master an insurer that the gloves were in good order.

If the learned trial judge had used that language without anything further, and had confined his definition of the duty of the employer to the language referred to, it would bear the construction as is insisted upon by appellant. However, the charge to the jury must be taken in its entirety. A phrase or a sentence cannot be isolated and segregated from the balance of the charge on the same subject. We must read the language in connection with that which precedes and that which follows. When this is done it is clear that the court charged the rule of reasonable care and caution to be exercised by the defendant to see that the rubber gloves furnished to the plaintiff were in good order and fit for the purpose for which they were to be used. The court clearly states that the duty devolves upon the defendant to use reasonable care, and such care as is commensurate with the danger, in inspecting and testing the rubber gloves to be used by its employees in the discharge of the dangerous duty of handling electric wires carrying high and dangerous voltage. This we think is a correct statement of the rule. The defendant well knew the danger attendant to the handling of electric wires carrying heavy voltage of electric current, and in recognition of this danger furnished rubber gloves to be used by the employees in handling these wires. The trial judge charged the jury that as a matter of law the defendant was required to exercise reasonable care and caution to see that the gloves furnished were in a reasonably safe condition, and to make such tests as would be reasonably necessary to discover defects. This language of the court does not encroach upon the prerogatives of the jury in the determination of facts. But it is a statement of the law with reference to the duty of the defendant which the defendant owes to the employee, and the court charges the jury that unless reasonable care has been used by the defendant and the injury results therefrom, that the defendant would be liable for the injuries resulting. This leaves for the determination of the jury the question of fact as to whether the defendant had exercised reasonable care in the matter of furnishing the rubber gloves to the plaintiff. The charge also puts the burden upon the plaintiff to prove by the preponderance of the evidence that the defendant had failed to exercise reasonable care in the matter of inspecting and testing the gloves before they were furnished to the plaintiff for use.

Appellant has cited numerous authorities in support of these three assignments of error. Among the authorities cited is the case of

Hart v. The Village of Clinton, 100 N. Y. Sup., 1092, in which it is said that "the master is not obliged to inspect tools in common use with which the servant is conversant." This appears as a quotation from Curtis on Electricity, page 850. The same authority refers to the case of Fritz v. Salt Lake Gas & Electric Co., 18 Utah, 493, 56 Pac., 90, where it is said:

"Absolute safety is unattainable and employers are not insurers. They are liable for the consequences not of danger but of negligence; and the unbending test of negligence in methods, machinery, and appliances, is the ordinary usage of the business. No man is held to a higher degree of skill than the fair average of his trade or profession, and the standard of true care is the conduct of the average prudent man."

By the same authority it is said (Section 475, page 700):

"Whether an electric company has performed its duty in reference to the inspection of its appliances is ordinarily a question for the jury" (citing R. R. Co. v. Appleton, 171 Ala., 324; Warren v. Electric Co., 141 Mich., 298; Nusolf v. Duluth-Edison Electric Co., 108 Minn., 369; Dugan v. Erie County Electric Co., 241 Pa., 259).

Appellant also cites and quotes from 1 Joyce on Electrical Law (2 Ed.), Sec. 438-b, under the head of "Duty of Inspection," wherein it is said: "The question whether the company has performed the duty imposed upon it as to the making of inspections is one for the jury to determine."

Other authorities are cited by appellant in support of the general rule that it is a question of fact for the jury to determine as to whether the defendant has exercised ordinary care and caution in the matter of furnishing safe tools and appliances for the use of its employees, and also reasonable care and caution in the matter of inspecting and testing tools and appliances to be used by the employees. (3 Labatt's Work on Master and Servant (2 Ed.), Sec. 1060; 39 C. J., Sec. 542-e; 4 Thompson on Negligence, Secs. 3784-3785.)

We have no fault to find with the authorities cited and relied upon by appellant on this question. We fully concur that the rule is correctly stated wherein it is a question for the jury as to whether reasonable care and caution has been used.

The portions of the charge of the court complained of under these assignments of error, merely state that as a matter of law the defendant was required to exercise reasonable diligence and caution in the manner and matter of inspecting and testing gloves, and that an occasional inspection would not meet this duty, but it was left for the jury to find whether, under the evidence, the defendant had exercised reasonable care, and such care as a man of ordinary pru-

dence would exercise, in the matter of testing and inspecting the gloves furnished to plaintiff.

The employee has a right to assume that the master has discharged the duty of inspecting and testing the tools and appliances furnished the employee with which to perform the work assigned to him. This is especially true where defects are not observable, and cannot be discovered except by a proper test, and this test is by a method used by the defendant to determine if the tool or appliance is safe.

In Guthrie v. Railroad, 11 Lea, 372, quoted approvingly in Morris Bros. v. Bowers, 105 Tenn., 65, it is said:

"The duty of the master is to use active diligence to prevent improper or unsafe tools or implements being furnished an employee by which he may be injured. The servant must use reasonable diligence in guarding against such injuries, but he may well rely, to some extent at least, on the faithful performance of duty on the part of the employer."

In Morris Bros. v. Bowers, supra, the court says:

"The duty of the master is absolute to use active diligence to prevent improper or unsafe tools or implements being furnished an employee by which he may be injured."

In the Missouri case of Doyle v. Missouri, etc., Co., 140 Mo. —, 44 S. W., 256, the court said:

"An employee or servant has the right to assume, in the absence of knowledge to the contrary, that the appliance which he is called upon to use, in the performance of his work, are reasonably safe and if there are latent defects, of which he has no knowledge, or which are not obvious to him while using ordinary care and observation, then he does not assume the risk attendant thereon."

Under the facts as disclosed by the evidence we do not think that the jury was left to speculate as to how the plaintiff received his injuries. Under the facts as hereinbefore summarized, we are of the opinion that the court submitted to the jury the question as to whether the defendant had exercised ordinary care in the matter of testing and inspecting the gloves. We are further of the opinion that the court correctly charged that as a matter of law the duty devolved upon the defendant to use ordinary care to see that the gloves were in a safe condition for use by the plaintiff, and that the court correctly charged as a matter of law that a mere occasional inspection and test of the gloves would not be sufficient, but such tests and inspections must be made to meet the rule of reasonable diligence and caution to be observed by the defendant. This rule would have special application in the matter of furnishing to the plaintiff rubber gloves to be used in the hazardous work of handling highly charged electric wires carrying dangerous voltage of electric current.

It results that the first, second, third and fourth assignments of error are overruled.

The fifth assignment challenges that part of the charge to the jury on the question of alleged negligence, and the theory of the defendant, and which excerpt in the charge is as follows:

"If, on the other hand, you find from the proof that the young man was experienced, that he had done this work before, that he understood as well as anyone else the dangers that were attached to the work, and the master had complied with his duty of reasonable inspection of the gloves, and had furnished him a safe material to do this work, and under those circumstances this injury occurred, then the plaintiff would not be entitled to recover, and your verdict in such case would be for the defendant."

We do not think that this portion of the charge complained of is subject to the criticism made by appellant. Appellant contends that this portion of the charge is erroneous, first, because as a matter of law the court cannot say there was an obligation upon the master for inspection; second, that it was error to tell the jury that it was the absolute duty of the master to furnish the plaintiff "safe material to do the work."

We think there was an obligation upon the part of the master to inspect and test the gloves furnished to the plaintiff, as a matter of law. We also think as a matter of law it was the duty of the master to furnish the employee "safe material to do the work," in the sense that the court used that language, and considering this particular language in connection with the balance of the charge on the subject. The court plainly tells the jury that the burden of proof is upon the plaintiff to show negligent failure upon the part of the defendant to properly test and inspect the gloves. This assignment is accordingly overruled.

Assignments six, seven, eight, and nine, are directed to the action of the court in refusing to give in charge to the jury special requests Nos. 1, 2, 3 and 4. We have carefully examined these special requests and find that where they contain a sound statement of the law, that they are covered by the general charge. The court fully instructed the jury with reference to the burden of proof being upon the plaintiff to prove the alleged negligence of the defendant by a preponderance of the evidence. We deem it unnecessary to discuss these special requests in the view we have taken to the effect that where proper they are fully covered by the general charge.

The tenth assignment is directed to that portion of the charge on the question of the age and experience of the employee, which is as follows:

"As a matter of law and common justice, it is not permissible to send an inexperienced young man about a dangerous work

unless the young man is capable, unless he knows that danger, and unless he is experienced in the work which he is called upon to perform, and if he find from the preponderance of the evidence in this case that the foreman under whom this young man was working and was under his orders, ordered him to go upon the pole, and that he was as a matter of fact, too young to understand the danger of the occupation he was called upon to perform, that he was inexperienced and that this was the cause of the injury, then the master has been guilty of negligence, and your verdict should be for the plaintiff in this case.''

The declaration, averred as one of the grounds of negligence resulting in plaintiff's injuries, that plaintiff was a young man of limited experience in this character of work; that he was not a first class lineman, and that he was not employed as a first class lineman, and that the particular work that he was called upon to do at the time he received his injuries, was work that was generally assigned to an experienced first class lineman, and not to a second class lineman; that the foreman in charge of the work, knew that he was young, and inexperienced in that particular class of work, and knowing that he was not a first class lineman, and not employed as such, directed him to go upon this pole and to perform the dangerous work of disconnecting the highly charged wire, and that this was work which required the skill and experience of a first class lineman. There was some evidence in the record to the effect that the particular service that plaintiff was required to do by the direction of the foreman was work usually assigned only to an experienced first class lineman. The foreman in charge of the work testified that the work which he directed the plaintiff to do at the time plaintiff was injured was work usually assigned to an experienced first class lineman, and he gave as his reason for assigning this work at this time to plaintiff, that there was not a first class lineman present, and that although plaintiff was classed as a second class lineman, he had already recommended him for promotion as a first class lineman, and thought that he was sufficiently experienced to do this work at the time that he directed him to do it. The plaintiff testified that it was the custom to have a first class lineman to go up onto the pole to do this character of work and a second class lineman would go up with him to assist in doing the work, but that this was not done on this occasion. It thus appears that one of the issues of fact involved was the question as to whether the defendant was negligent in assigning this work to this young man, considering his age and the time he had been employed and the class of workman that he was. This presented an issue to be determined by the jury under proper instructions from the court.

It is conceded by appellant in the excellent brief filed that this portion of the charge probably did not materially affect the verdict,

and that it is submitted merely for the purpose of showing that the trial judge was confused and gave a confusing charge to the jury. Under the facts as disclosed by the record, and under the issues as presented by the pleadings, we find no error in this portion of the charge complained of under this assignment, and it is accordingly overruled.

After a careful review of the record, and the charge of the court as applied to the facts, we are of the opinion that the assignments of error are not well taken. We find no error in the charge of the court, or in the refusal of the court to grant the special requests submitted by defendant.

It results that all assignments of error are overruled and the judgment of the lower court is affirmed. Judgment will be entered here for the amount of the judgment below with interest thereon from the date of the judgment, the costs of the suit, including the cost of this appeal in favor of plaintiff and against the defendant.

Heiskell and Owen, JJ., concur.