RUTLEDGE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

In Banc, June 18, 1894.

1. **Negligence:** RAILROAD: SERVANTS, RULES FOR PROTECTION OF. It is the duty of an employer, operating a railroad, to use ordinary care in so doing; and, accordingly, to adopt and to enforce reasonable rules for the protection of employees engaged in such a service.

2. ———: ———: ———. Where a rule is habitually disregarded with the knowledge of the master, it amounts to no rule.

3. ———: ———: ———. The master is not an insurer of the observance of rules, though obliged to use reasonable care to enforce them.

4. ———: ———: FELLOW SERVANTS. Plaintiff, a switchman, while attempting to uncouple a car in a railway yard, was injured in consequence of an unexpected movement of the train, without signal

| 123 | 121 |
| 122 | 33 |
| 122 | 593 |
| 123 | 121 |
| 127 | 675 |
| 123 | 121 |
| 140 | 370 |
| 123 | 121 |
| 78a | 643 |
| 80a | 369 |
| 123 | 121 |
| 153 | 398 |
| 153 | 400 |
| 123 | 121 |
| 84a | 357 |

from him. The movement was caused by the act of the locomotive engineer in response to a signal from some employee on the train; *held,* that these men were fellow servants.

5. ———: ———: SERVANT: RULES: PROXIMATE CAUSE. Plaintiff counted on the absence of a rule, that a person uncoupling cars should alone give the signal for the necessary movement of the train while so engaged; but it appeared that there were printed rules, prescribing the signals for such train movements, and a long established custom among the employees to the same effect as the proposed rule which plaintiff demanded; *held,* in the circumstances stated in the opinion, that the absence of such a formal rule could not reasonably be found to be the cause of plaintiff's injury. (MACFARLANE, J., *dissenting*).

6. **Negligence.**    Negligence is an affirmative fact to be established by proof.

7. **Master and Servant:** EVIDENCE.    Where evidence tends to show that one of three persons (standing in diverse relations to a common master) gave a certain signal; *held,* that it did not of itself tend to identify a particular one of them as the person who gave it.

8. **Appellate Practice:** SECOND APPEAL: RES JUDICATA. The general rule of law is that parties are concluded on a second appeal in the same cause by the rulings on the first; though this rule is subject to some exception as stated in the opinion.

9. ———: REMANDING CAUSE: AMENDMENT. Where it appears, from plaintiff's own testimony, that he has no cause of action upon any view of the facts, the supreme court will reverse the judgment without remanding; but where it is suggested that he may be able to amend so as to present a case on the same facts, opportunity for so doing will be given, especially where his demand would otherwise be barred by limitation.

*Appeal from Osage Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *William S. Shirk* for appellant.

(1) The plaintiff's objection to the introduction of any evidence, because the petition does not state a cause of action, should have been sustained. *Rutledge v. Railroad,* 110 Mo. 312; Shearman & Redf. on Negli-

gence, secs. 25, 26; *Harlan v. Railroad*, 65 Mo. 22, *et. seq.*
The petition alleges that the act which caused plaintiff's
injury was that "some agent of the defendant in charge
of the engine caused the train of cars to be moved,
with great force," and that defendant's failure to pre-
scribe a system of signals and rules for their use, was
"directly the cause" of the train being moved—a mere
conclusion, but how or why it was directly the cause is
nowhere averred, nor are there any facts stated in the
petition from which it can even be inferred that the
absence of a system of signals or rules caused the train
to suddenly move. (2) The demurrer to plaintiff's
evidence should have been sustained, and this for
many reasons. *Harper v. Railroad*, 44 Mo. 488;
*Waldhire v. Railroad*, 71 Mo. 514; *Bullene v. Smith*,
73 Mo. 151; *Ischer v. Bridge Co.*, 95 Mo. 261; *O'Brien
v. Steele Co.*, 100 Mo. 182; *Humphrey v. Railroad*, 110
Mo. 312. (3) The uncontradicted and undisputed evi-
dence, both for plaintiff and defendant, shows—in fact
it stands admitted—that the defendant had made and
published a system of signals to be used by its em-
ployees. Plaintiff's only complaint at the trial was,
that with this system or code of signals to govern the
movement of engines and trains, there was not a printed
rule or command saying, in effect, that such signals
should only be given by the employee who wanted to
start or stop the train. But such express rule or com-
mand was wholly unnecessary, because it is necessarily
implied, from the mere making and publishing of the
system of signals. *Corcoran v. Railroad*, 27 N. E. Rep.
(N. Y.) 1022. (4) And not only was this necessarily
implied, but it was actually so understood from such
code of signals by plaintiff and all the employees in
the yards at Chamois. And it could not have been
reasonably anticipated by defendant that anyone but
the employee who wanted the train moved would give

such signal. In such case, defendant is not liable for not having promulgated such a rule. *Berrigan v. Railroad*, 30 N. E. Rep. (N. Y.) 57; *Morgan v. Railroad*, 31 N. E. Rep. (N. Y.) 234; *Burke v. Railroad*, 23 N. Y. St. Rep. 458. It was not shown that any other railroad company in America, Europe or England had any such rule. *Lawson v. Railroad*, 15 N. Y. St. Rep. 384. (5) It was error to give to the jury the plaintiff's first instruction. *Waddingham v. Hulet*, 92 Mo. 528; *Gessley v. Railroad*, 26 Mo. App. 156; *Abbott v. Railroad*, 83 Mo. 272. (6) It was error to permit the plaintiff to testify what the result would have been if there had been a certain rule prescribed. Such evidence is merely conjectural. *Rutledge v. Railroad*, 110 Mo. 312; *Winters v. Railroad*, 39 Mo. 468. (7) The verdict of the jury is against the evidence, and in contempt of the instructions of the court given on behalf of the defendant, and is the result of prejudice and passion. Such a verdict would have been impossible, if the jury had considered the uncontradicted and undisputed evidence and the admitted facts in the case and then obeyed the instructions of the court. *Oglebay v. Corby*, 96 Mo. 285; *Hemelrich v. Carlos*, 24 Mo. App. 264; *Clark v. Fairley*, 30 Mo. App. 335; *Brewery Co. v. Bodeman*, 12 Mo. App. 573; *O'Donnell v. Railroad*, 7 Mo. App. 190. The verdict, being for $10,000 for the loss of an arm, in the absence of any circumstances of aggravation or gross carelessness, is excessive.

*Ryors & Vosholl*, *J. W. Zevely* and *I. W. Boulware* for respondent.

(1) The petition is sufficient, and clearly states a cause of action. Shearman & Redfield on Negligence [3 Ed.], sec. 93; 14 Am. and Eng. Encyclopedia of Law, 907; *Abel v. President, etc.*, 103 N. Y. 581; *Rail-*

*road v. Lavely*, 36 Ohio St. 221; *Shehan v. Railroad*, 91 N. Y. 332; *Vose v. Railroad*, 2 H. and N. 728; *Railroad v. Taylor*, 69 Ill. 461; *Ford v. Railroad*, 124 N. Y. 493; *Byrnes v. Railroad*, 113 N. Y. 251; *Whittaker v. President, etc.*, 126 N. Y. 544; *Doss v. Railroad*, 59 Mo. 27; *Reagan v. Railroad*, 93 Mo. 325; *Rutledge v. Railroad*, 110 Mo. 312; *Abel v. President, etc.*, 128 N. Y. 662; *Francis v. Railroad*, 110 Mo. 387; (2) And this matter of the sufficiency of this petition is, in this case, *res adjudicata*. *Rutledge v. Railroad*, 110 Mo. 312; *Musser v. Brink*, 80 Mo. 350; *Anderson v. McPike*, 41 Mo. App. 330; Wells on Res Adjudicata, secs. 513, 617. (3) The damages are not excessive. *Dougherty v. Railroad*, 97 Mo. 48; *Dowling v. Allen*, 102 Mo. 215; *Gratiot v. Railroad*, 21 S. W. Rep. 1094. (4) The court properly declared the law to the jury, and if error exists it was in favor of appellant. (5) It was not error for the court to refuse to instruct the jury that if he remained in employ of defendant after he knew that no rule had been published or established for the protection of employees, as claimed in his petition, he could not recover on the ground of the absence of such rule. Such a doctrine is not applicable to this case. The decisions cited by counsel for defendant are all applicable to cases involving dangers arising from machinery and dangers arising apparent alike both to master and man. The law in this case is "dangers connected with a business which are unavoidable after the exercise by the master of proper care and precaution, are risks incident to the business and assumed by the servant." *Flynn v. Railroad*, 78 Mo. 195; *McGovern v. Railroad*, 25 N. E. Rep. 373; *Ford v. Railroad*, 124 N. Y. 493; *Morgan v. Ore and Iron Co.*, 15 N. Y. Supp. 609; *Huhn v. Railroad*, 92 Mo. 440; *Reagan v. Railroad*, 93 Mo. 348. (6) This court will take judicial notice of its record in the former appeal

in this case. 12 Am. and Eng. Encyclopedia, 183; *State v. Bowen*, 16 Kan. 475; *Bank v. Bryan*, 13 Bush. (Ky.) 419. This court will take judicial notice of the manner in which railroads in this country are managed. *Downley v. Hendrie*, 46 Mich. 498; *Bank v. Earle*, 13 Pet. (U. S.) 519. (7) There is no variance or failure of proof. The evidence shows a sudden movement backward without notice. This matter of variance is also *res adjudicata* in this case. *Rutledge v. Railroad*, 110 Mo. 312. (8) The evidence, taken as a whole, clearly shows the existence of a custom amongst the employees, and the nonexistence of a rule concerning such custom. The existence of such a custom only emphasizes the neglect of the master. Authorities cited before; *Ford v. Railroad*, 124 N. Y. 493; *Abel v. President, etc.*, 103 N. Y. 581; *Rutledge v. Railroad*, 110 Mo. 312. (9) The evidence does show that the engineer gave the sudden motion (without notice to plaintiff), upon a signal received from a servant of defendant, but not the plaintiff. (10) It is conceded that the law requires of a railroad company diligence and care, not only in furnishing proper and reasonably safe appliances and machinery, and skillful and careful employees, but also to make and promulgate rules for the management and conduct of its business, which, if faithfully observed, will afford its employees reasonable protection. *Rutledge v. Railroad*, 110 Mo. 312; *Abel v. President, etc.*, 103 N. Y. 581; *Reagan v. Railroad*, 93 Mo. 348; *Abel v. President, etc.*, 128 N. Y. 662.

### DIVISION ONE.

BARCLAY, J.—This an action for personal injuries sustained by plaintiff. He charges defendant with liability therefor on account of the want of needful

rules for the management of its business in which he was employed.

We need not recite the pleadings, as their essential features will appear further on.

The case was before the second division of the court on a former occasion, and is reported, 110 Mo. 312.

Plaintiff's evidence disclosed that he was a switchman in the railway yards of defendant at Chamois, Missouri, at the time of his injury, August 12, 1887. It was night; about 9 o'clock. A local freight train had come into the yard, composed of both loaded and empty cars. These were arranged or "made up" under the direction of Mr. Humphrey, the night yardmaster at that point. In this process plaintiff received an order from Mr. Humphrey to cut off the last car. The train (consisting of twenty-six or twenty-seven cars) was moving slowly westward, at a speed of about six or seven miles an hour. The car to be "cut off," or disconnected from the other cars, was an empty flat, or coal car. Immediately in front of it was a box car. The coal car had barriers of board, about three feet high, along the side. Plaintiff climbed upon the car, and had just passed around the end of the side-board, approaching the drawhead to take out the coupling-pin, when the train suddenly checked its motion, without any signal from plaintiff, and he was thrown to the ground between the cars and injured so that he lost his right arm in consequence.

The train was moved by a locomotive engine at the west, or forward end. An engineer and fireman were upon the locomotive.

The switching crew of the yards consisted of plaintiff and two other men besides the yard-master. One of these other switchmen was working on this train, toward the forward end, much nearer to the locomo-

tive than plaintiff. The yard-master was on the ground, and west of plaintiff's position when he was injured.

All the switchmen and the yard-master had hand lanterns with which signals were given.

The engineer of the train testified on behalf of plaintiff that he reversed the engine in response to a signal from someone; but he did not identify the giver of it.

Mr. Dring, the switchman nearest to the engine, testified for defendant that he transmitted the stop signal to the engineer; but had received it from some one east of him (that is to say in the direction of the plaintiff). Plaintiff, as also the yard-master and the remaining switchman (who was a long distance east of the train and was not at the moment working with it), testified, each for himself, that he gave no signal whatever at that time.

On the part of defendant, it appeared that the printed rules governing employees, contained the following directions as to signals, viz:

## "LAMP SIGNALS."

"1. A lamp swung across the track is a signal to stop.

"2. A lamp raised and lowered vertically is a signal to move ahead.

"3. A lamp swung vertically in a circle across the track, when the train is standing, is a signal to move back.

"4. A lamp swung vertically in a circle across the track when the train is running, is a signal that the train has parted.

"5. A flag or the hand moved in any of the directions given above, will indicate the same signal as given by the lamp."

The plaintiff, in his own examination, admitted that he was acquainted with the above rules, and that they were in force at the time of his injury.

This is a brief outline of the essential features of the case.

The plaintiff relies on a charge of negligence, in that defendant omitted to promulgate and enforce a rule that the person coupling or uncoupling cars should alone give the signals for the movement of trains necessarily incident to those acts.

1. It appeared from plaintiff's personal testimony that the point at which he was hurt was distant some twenty-five or twenty-six car lengths from the engine whose movement, unexpected by plaintiff, caused his injury; and that when a man, in the act of coupling, could not be seen by the engineer, the signal was transmitted from the former to the latter through some intermediate employee whose duty it was to repeat the signal.

Plaintiff's own evidence shows that any such rule as he contends for, namely, that "no one shall give a signal to move the cars except the party who is doing the work," is entirely unreasonable and impracticable.

Signals must of necessity often be communicated by others, as plaintiff himself admits. A rule which would require no movement of the engine to be made, in such circumstances, except in response to a signal from one person, when he might be in a position where his signal could not be seen by the engineer, would be such an unreasonable impediment to the prompt dispatch of defendant's business as a public carrier, that we do not consider the question whether or not defendant was bound to adopt it, debatable, or one upon which fair minded men would differ.

2. But let us view plaintiff's contention more broadly, treating it as a demand for some rule requir-

ing the signal for a train's movement, in such a case, to start from the workman engaged in handling the coupling machinery.

The printed rules (above copied) prescribe with much precision what signals are to be made to direct the necessary movements of trains. They do not expressly state by whom the signals are to be given; but it is fairly to be inferred that they are to originate with the individual employee entitled at the time to call for the required movement. The printed rules are intended for use by men acquainted with the business they undertake. Rules are not required to minutely direct every detail of the work which the employees are accustomed to perform properly.

Plaintiff himself said, in reply to the question, "who has to give the signal?", "the man doing the work, *for he can't do the work without it.*"

The proof on behalf of plaintiff plainly indicates that the workmen understood and acted upon the printed rules, touching signals, in accordance with the inference which those rules naturally suggest; and that a custom or practice existed, conforming to the method of work which plaintiff claims should have been more formally expressed on paper and declared to be a rule.

He emphasizes the fact that a general custom, "system" or practice had long prevailed among the defendant's workmen at Chamois to the effect above stated; and relies upon it as tending to indicate defendant's negligence.

Plaintiff, in his cross-examination, stated his legal position with entire frankness in this way:

"*Question.* That is what you base your case upon, that the negligence of the company was its failure to print, in this time-card, the custom that the man who wanted to stop or start the train should give the signal?

That is your whole ground of complaint, is it not?
*Answer.* Yes, sir.''

His petition puts forward substantially the same
theory, for it is therein stated ''that it is the custom
for the person actually engaged in coupling cars to
give all signals for the engine to move the cars in
any direction; that this custom is merely in use by
employees, and not because of any peremptory orders
from the defendant.''

There can be no doubt as to the exact nature of
plaintiff's claim, and the defendant insists that on the
merits he has no standing in a court of law.

It must be borne in mind that on the former
appeal certain principles were announced in the second
division which we take as the law of the case.

In Missouri the general rule is that parties are con-
cluded on a second appeal by the rulings made on the
first, in the same action. We do not now allude to
cases finally adjudged on the first appeal, for any later
litigation on the same subject would then fall within
reach of the law of *res judicata.* But we refer to the
effect of a prior decision in the same pending cause,
with reference to the rule of *stare decisis.*

There is no immutable fiat of jurisprudence forbid-
ding a change of rulings on a second appeal. One
decision may discard a rule of law announced in
another. Courts of last resort occasionally find it
proper and just to overrule, and thus correct, their
former declarations of legal principles. It sometimes
is a matter of congratulation that justice can be finally
done, in that manner, in the same cause, on a later
appeal when necessary. It has been done, in this
state, in several instances (*Hamilton v. Marks* (1876),
63 Mo. 167, and *Keith v. Keith* (1889), 97 Mo. 223,
for example).

But they are exceptional and rather give point to the general rule, which we have above stated, than impair it.

So we turn to the opinion on the former hearing of this cause in the second division (110 Mo. 321) for guidance, so far as the rulings then made are applicable to the facts presented in the present record.

It was then held that the evidence failed to establish a causal connection between the absence of such a rule, as has been already described, touching the giving of signals by the person actually engaged in coupling or uncoupling cars, and the injury which befell plaintiff.

In the case now made we have the following facts, additional to those considered, namely: that the engineer caused the movement of the train which threw plaintiff between the cars; that he did so in obedience to a customary signal to that effect; that plaintiff did not give such a signal; and that where a switchman, operating the coupler, is out of sight of the engineer, the necessary signals are transmitted to another, stationed within view of both, who repeats or forwards to the engineer any signal so given.

Do these new facts point to a different conclusion from that pronounced on the former hearing?

It is undoubted law in this state that it is the duty of an employer, engaged in so complicated and extensive an undertaking as the operation of a railway, to exercise ordinary care in his method or "system" of conducting that business. One part of that duty requires the enforcement of reasonable rules or regulations for its control, having due regard for the safety of employees engaged therein. (*Reagan v. Railroad* (1887), 93 Mo. 348).

The object and purpose of rules, however, are to secure a certain mode of carrying on the master's work, namely, in the manner those rules prescribe.

Hence it has been held that it is not enough to adopt or promulgate a rule. The master must also use care to insist on its observance. *Whittaker v. Railroad*, (1891), 126 N. Y. 544.

Where a rule is habitually disregarded, for so long a time and in such circumstances as to justify the inference that the master knows and consents thereto, the mere existence of the rule will not absolve the master from a liability which would exist in its absence. A dead rule is, in legal contemplation, no rule at all. *Barry v. Railroad* (1889), 98 Mo. 62; *Railroad v. Nickels* (1892), 4 U. S. App. 369.

The effect of the precedents last cited is that the master is responsible for the exercise of due diligence in directing the mode and manner of carrying on his business. But the perfect corollary of that proposition is that he is not liable where the mode in which it is carried on, by his authority, is reasonably safe, prudent and careful, howsoever that result may be brought about.

What greater protection would the plaintiff have had from the existence of a formal rule, directing the work to be done in the manner which the men already observed? How can it justly be said that there is need of a particular rule, or negligence in failing to declare it, when the practice which it would prescribe has already been adopted and is followed by the men to whom it would apply?

It is a serious error to suppose that by promulgating a paper rule the master would become responsible for its observance in every case which it fitted. A rule, such as is here in contemplation, is but a direction or command as to the mode of carrying on the work. The master is bound to the use of reasonable diligence in enforcing it; but he certainly is not an insurer of its observance.

The practice of the men, the custom of the yard, in the case before us, admittedly required that signals for movements of the train, while the coupling machinery was being manipulated, should originate with the person assigned to handle that machinery. That practice or custom was a part of the mode of conducting defendant's work, and its long continuance implies that it had the sanction of defendant. The employees were expected to conform to it as part of the usual course of the defendant's business.

The practice of the workmen, no less than any possible rule, sanctioned the repetition of the first signal, in some circumstances, by another employee, in order to catch the eye of the engineer. The latter (who testified for plaintiff) declared that he stopped the locomotive and train in response to a lantern signal given by someone. If that signal, at the time plaintiff was hurt, did not originate with the plaintiff, there was a plain violation of the custom and practice of the yard, quite as much as there would have been a violation of the rule, had one existed to the same effect.

It was negligence of some sort on the part of some of the workmen engaged upon the train in failing to observe the practice or custom in use, touching the movement of trains. These workmen were fellow servants of plaintiff in a common employment, and for their negligence, in this particular, defendant is not liable.

A remark was made by Judge THOMAS on the former appeal, that "it seems to be well settled, also, that rules adopted by the employees, not regularly prescribed, and obedience to which is not required by the company, will not excuse the company from the performance of this duty," namely, of making needful rules for the safe prosecution of the business.

It does not appear, however, in the present record that the employees at Chamois were not required to con-

Rutledge v. The Mo. Pac. R'y Co.

form to the practice or custom described. The evidence throughout plainly indicates the contrary, and that it amounted to a verbal rule or direction as part of defendant's method of doing business, taken in connection with the printed rules, touching the giving of signals.

The first witness for plaintiff, who had been both switchman and yard-master there, testified, in his examination in chief, on this point, thus:

"*Q.* State whether or not the Missouri Pacific Railway Company had any rules or regulations for the government of its employees in making up trains and shunting and kicking off cars, for the warning of all persons liable to be injured; state, if you know? *A..* I never saw any rule, if they have any, but it is understood amongst us in the yard that the man who is coupling or cutting off cars is to give the signal."

\*  \*  \*  \*  \*  \*

"*Q.* Had the railroad company any system of signals published for use amongst its employees, for use in the yard at Chamois, to be used in cutting off cars, and for coupling and uncoupling cars from other cars? *A.* They had none published, except it was understood amongst the employees; the system was understood amongst us."

The plaintiff himself testified that he had been taught the signals when he first went to work by "the yard-master and all the rest of the switchmen we worked with." He does not claim that he was ever taught that the observance of the practice was optional or unobligatory. He nowhere in his evidence charges that the custom was not binding on the employees as a part of the routine of work in the yard, sanctioned by defendant. On the contrary, his real grievance is that the men did not "live up to it" at the time he was hurt, as appears in this passage from his testimony:

"*Q.* If there had been any rule prohibiting that train from stopping until you gave the signal, what would have been the result? *A.* I think *if they had lived up to it as they pretend to do* it would have been otherwise."

The case as now presented does not, therefore, fall within range of the remark of Judge THOMAS above quoted. But we think, moreover, that learned judge (as the conclusion then announced by him shows) had no intention of holding that a custom, generally recognized and practiced by managers and workmen as the correct mode of conducting a certain business, could form the basis for a recovery against the master, simply because the practice had not been reduced to the form of a paper, or formal rule.

3. Had plaintiff's evidence tended to show that the signal was given by the yard-master, a different question would arise; but, as the proof has no such tendency, we need not go into that subject.

Negligence is an affirmative fact to be established by proof. Although that proof may often be supplied by reasonable inferences from other facts in evidence.

The jury might, from the testimony already detailed, have found that some one of the men about the train gave the stop signal; as an inference from the statement of the engineer that such a signal was given. The yard-master was near the train at the time, as was another switchman, besides plaintiff himself. This switchman, Mr. Dring, testified that he gave the signal; but, as his evidence was on behalf of, and favorable to, defendant in this regard, we can not take that statement into account as against plaintiff in determining the sufficiency of plaintiff's case, though he is entitled to any beneficial inference therefrom in determining whether his case should go to the jury.

The testimony for the plaintiff that a signal was given, in the circumstances stated, does not tend to identify the yard-master as the particular one of the three persons who might have made it. So that point drops out of view.

4. In no aspect of the case do we see that plaintiff's position is improved by the facts developed at the last trial.

We are of opinion that no causal connection appears between the absence of such a rule as plaintiff insists upon, and the damage he has sustained, as declared on the first appeal in this cause.

The custom or practice, recognized by all engaged in the prosecution of defendant's business, as a direction for the conduct of the work, afforded plaintiff quite as much security and protection as the rule could have done. We hold that plaintiff's injuries can not justly be ascribed to the want of such a rule as their juridical cause; and that the trial court should have given the defendant's instruction in the nature of a demurrer to the evidence.

It follows that the judgment should be reversed (*Carroll v. Transit Co.* (1891), 107 Mo. 664), and it is so ordered. BLACK, C. J., and BRACE, J., concur. MACFARLANE, J., dissents.

MACFARLANE, J. (*dissenting*).—I do not concur in the opinion of the majority nor the result reached. On the former appeal in this case it was said by Judge THOMAS in discussing the question of the duty of the master in respect of making and promulgating suitable rules for the protection of his servants while in the discharge of their duties: "And it seems to be well settled also that rules adopted by the employees, not regularly prescribed, and obedience to which is not required by the company, will not excuse the company

from the performance of this duty." I am of the opinion that this is a correct declaration of the law as applied to the facts in this case and that the opinion of the majority expressed by BARCLAY, J., is inconsistent with it.

While the master can not be held liable to one servant for injuries resulting to him through the negligence of a co-servant, in the circumstances and the relation of the servants to each other and to the common master, shown to have existed in this case, yet he was bound to the exercise of such reasonable care and diligence as will give them reasonable protection. These duties require as well the making and promulgating suitable rules and regulations, as to furnishing reasonably safe appliances and machinery and skilled and careful employees. The rule, therefore, is well settled that the master is responsible for the results of his own negligence in failing to make and promulgate proper rules and methods for the conduct of such of his business as may be of a complex and hazardous character. *Reagan v. Railroad*, 93 Mo. 348; *Francis v. Railroad*, 110 Mo. 394.

This principle, we understand, is not disputed; but it is said that if the employees adopt a custom, under which their duties are performed, which gives reasonable protection, there is no reason for a rule, by the master, embodying the same methods as those thus voluntarily adopted. To this [proposition I do not accede. A rule, unless enforced, is of no purpose in the way of protection. The enforcement of rules, only, makes them effective. The master alone has the authority to enforce their observance. The laborers, among themselves, have no such authority, or any other effective means ef enforcing the observance of a custom. So a custom has no more binding force, on an emyloyee, than has a rule which, with the master's

knowledge, is habitually disregarded. A rule unenforced secures no protection to employees. *Barry v. Railroad*, 98 Mo. 66. A custom permits a discretion by each employee. An authoritative rule leaves no discretion. The latter gives protection, the former allures into unexpected perils. *Abel v. President, etc.*, 103 N. Y. 581; *Ford v. Railroad*, 124 N. Y. 493.

The evidence in this case tended to prove that the signal to stop the train was not given, as custom required, by plaintiff, who was charged with the duty of uncoupling the cars and who was exposed to the dangers incident thereto. We can not say that the negligent act of some other employee would have been committed had all engaged in the work been acting under, and been governed by, a rule formulated and enforced by the company, instead of one voluntarily adopted by the employees, for their mutual pretection, and having only such binding force as the care, competency, humanity or discretion of each might enjoin.

It may be correctly said that in making rules for the government of its employees, a railroad company is only bound to exercise ordinary care, and is not required to guard against every possible contingency that may arise. *Berrigan v. Railroad*, 131 N. Y. 582; *Morgan v. Ore & Iron Co.*, 133 N. Y. 666; *Barry v. Railroad, supra*. But it seems that the necessity for rules in handling cars in the yards of defendant at Chamois, was so manifest that the switchman had, by custom, adopted one which required the signals for moving the train to be given only by the one manipulating the machinery, and who was exposed to danger from improper or premature movements.

It seems very clear to me, also, considering the necessary dangers incurred in coupling cars, especially in the night time, that the observance of some such rule should have been authoritatively required.

We do not say that a custom, if known to the employees and sanctioned and enforced by the company, would not answer the purposes of a written or printed rule. Whether the master sanctioned and enforced the custom in question in this case was a question for the jury.

### ON REHEARING IN BANC.

PER CURIAM.—The court *in banc* approves the opinion delivered on behalf of the majority of the judges in division one, and adopts the same as the decision of the court, all the judges concurring, except MACFARLANE, J., dissenting.

### ON MOTION TO MODIFY JUDGMENT.

PER CURIAM (BLACK, C. J., and BRACE, BARCLAY, GANTT, MACFARLANE, SHERWOOD and BURGESS, JJ.).— On motion to modify the judgment, it has been suggested that plaintiff may have a cause of action upon further proof that the signal on which the engineer acted, originated with the yard-master.

Plaintiff hence prays that the judgment be modified so as to remand the cause; and thus give him an opportunity to amend, and present that phase of the case to the trial court, the statute of limitations having intervened as against any new action he might bring.

On consideration of this motion we are of opinion that it should be granted. *Bowen v. Railroad* (1893), 118 Mo. 541; *Lilly v. Tobbein* (1891), 103 Mo. 477. Accordingly the final judgment of this court will be that the judgment of the circuit court be reversed and the cause remanded.