ELSIE BOCKLITZ, Respondent, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.*

St. Louis Court of Appeals. Opinion Filed April 1, 1924.

1. **STREET RAILROADS:** Negligence: Humanitarian Rule: Supervisor Directing Traffic: Careless Pedestrian: Failure to Warn: Liability. A supervisor of traffic standing at the intersection of streets for the purpose of directing the traffic in defendant's street cars, and seeing or by the exercise of ordinary care could have seen that an approaching motorman could not see the plaintiff, who was proceeding from the sidewalk across the street bent on her way to catch the car, because of standing cars on the next track, and also seeing, or by the exercise of ordinary care, could have seen that plaintiff could not see the on-coming street car, and the supervisor under these circumstances signalled the motorman to go ahead

without stopping for waiting passengers, the car striking and injuring plaintiff, *held* that the supervisor was duty bound, under the humanitarian rule, to have exercised ordinary care to save plaintiff either by halting the car by signalling the motorman, or by exclaiming or otherwise warning plaintiff to stop on seeing her about to enter the danger zone.

2. ———: ———: ———: ———: ———: Evidence: Sufficient to Warrant Inference of Failure to Warn. In an action for damages for personal injuries caused by being struck by a street car, evidence reviewed and *held* to warrant the inference that the supervisor of traffic directing the traffic in defendant's street cars failed to discharge his duty under the humanitarian rule to warn plaintiff of her danger.

3. APPELLATE PRACTICE: Reversals: Failure of Proof: Evidence: Cause of Action on Different Theory: Not Reversed Outright: Remanded for Amendment. In an action for damages for personal injuries caused by being struck by a street car, where the petition relies entirely upon a failure to stop the car in time to have avoided the accident, and that phase of the case was not proven, and for that reason the judgment must be reversed, and it appears from the evidence that plaintiff has a cause of action under the humanitarian rule based upon the failure of the defendant's supervisor of traffic to warn the plaintiff of the danger in time to have avoided the injury, the judgment will not be reversed outright, but in furtherance of justice the cause will be remanded for a new trial so that the petition may be amended, giving plaintiff the right to try her case on that theory.

ALLEN, P. J., concurs in the opinion, except in so far as it holds that the evidence tends to show liability as for the failure of the superintendent to warn plaintiff, as to which he expresses no opinion.

---

*Headnote 1. Street Railroads, 36 Cyc, p. 1565; 2. Street Railroads, 36 Cyc, p. 1607 (Annotations); 3. Appeal and Error, 4 C. J., section 3235.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Victor H. Falkenhainer,* Judge.

REVERSED AND REMANDED.

*Charles W. Bates, T. E. Francis* and *Vance J. Higgs* for appellants.

(1) Demurrers to the evidence should have been sustained because: (a) By offering instruction number one, which was given, plaintiff not only abandoned the assignments of negligence which this instruction excluded, but also conceded that she was finally barred from recovery unless plaintiff's supervisor was guilty of actionable negligence under the humanitarian rule, in failing to cause the car to stop so as to avoid a collision with the plaintiff. Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 433; Phillips v. East St. Louis & S. Ry. Co., 226 S. W. 863. (b) There was no actionable negligence on the part of the supervisor, even under the humanitarian rule. 1. The supervisor neither saw the plaintiff, nor was he under any duty to see her, in a position of danger. 2. He was not in control of the car, nor of the means to bring the car to a stop. 3. Even had the supervisor seen plaintiff approaching the track, he would have been justified in assuming (there being nothing to indicate that plaintiff was unconscious of her surroundings) that she would stop before stepping on the track. There is no evidence that the supervisor saw, or could have seen, the plaintiff in a position of peril in time to have averted the collision. Boyd v. Wabash & Western Ry. Co., 105 Mo. 371, 16 S. W. 909; Boring v. Metropolitan Street Ry. Co., 194 Mo. 541, 92 S. W. 655; Lackey v. U. R. Co., 288 Mo. 120, 231 S. W. 956; Rissler v. St. Louis Transit Co., 113 Mo. App. 120, 87 S. W. 578; Paul v. U. R. Co. of St. Louis, 152 Mo. App. 577, 134 S. W. 3; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 163. (2) (a) The undisputed facts clearly show that plaintiff was negligent as a matter of law. Giardina v. St. Louis & M. R. Co., 185 Mo. 330, 84 S. W. 928; Hornstein v. U. R. Co., 195 Mo. 440, 92 S. W. 884; Boyd v. Wabash & Western Ry. Co., 105 Mo. 371, 16 S. W. 909; Hafner v. St. Louis Transit Co., 197 Mo. 196, 94 S. W. 291; Rissler v. St. Louis Transit Co., 113 Mo. App. 120, 87 S. W. 578; Bierman v. U. R. Co., 244 S. W. 94. (b) Plaintiff's own testimony precludes recovery under the humanitarian doctrine. 1. Plaintiff was neither oblivious of her peril nor unable to avert the collision. Gettys v.

St. Louis Transit Co., 103 Mo. App. 564, 78 S. W. 82; Moore v. Lindell Ry. Co., 176 Mo., 528, 75 S. W. 672; Dey v. U. R. Co., 140 Mo. App. 461, 120 S. W. 134; Watson v. Mound City Street Ry. Co., 133 Mo. 246, 34 S. W. 573. 2. Alleged negligence on the part of defendant's agents could not have been a proximate cause of the collision, because plaintiff subsequently stepped from a position of safety to one of danger and thus rendered a collision inevitable. Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23; Dey v. U. R. Co., 140 Mo. App. 461, 120 S. W. 134; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 433; Moore v. Lindell Ry. Co., 176 Mo. 528, 75 S. W. 672; Ries v. St. Louis Transit Co., 179 Mo. 1, 77 S. W. 734; Aldrich v. St. Louis Transit Co., 101 Mo. App. 77, 74 S. W. 141; Rissler v. St. Louis Transit Co., 113 Mo. App. 120, 87 S. W. 578; Watson v. Mound City Street Ry. Co., 133 Mo. 246, 34 S. W. 573. (3) Instruction number one, given at plaintiff's request, is fatally erroneous. (a) This instruction directs a verdict upon hypotheses, without foundation in the evidence, viz.: 1. That the supervisor saw, or by the exercise of ordinary care could have seen, the plaintiff in a position of peril in time to have caused the motorman to stop the car. 2. That "in approaching said track" plaintiff was in a position of peril and oblivious of her peril. (b) Instruction number one is further erroneous in the following particulars: 1. It does not require a finding that the supervisor failed to exercise ordinary care to see plaintiff and assumes negligence on his part in failing to see her. Kersulov v. Boehmer Coal Co., 257 S. W. 887. 2. It permits a verdict for plaintiff "if the supervisor signaled . . . to move said car . . . without stopping it," without requiring a finding that such signal was given while plaintiff was in a position of peril, and at a time when the supervisor, in the exercise of ordinary care, should have known of her danger. Rubick v. Sandler, 219 S. W. 401. 3. It does not require the jury to find that the collision resulted from the failure of the supervisor to stop the car, or from his signal to the motorman to pass the intersection without stopping it. 4.

It directs a verdict for plaintiff on the hypotheses named, "although the plaintiff failed to exercise ordinary care for her own protection and safety by going to the place where such collision occurred," without qualification as to the time when plaintiff negligently went to the point of collision, and even though her negligence may have been subsequent to that of the defendant and may have been the proximate cause of the collision. Lackey v. U. R. Co., 288 Mo. 120, 231 S. W. 956; Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23; Dey v. U. R. Co., 140 Mo. App. 461, 120 S. W. 134; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 433. Instruction number one directs a verdict for plaintiff, without requiring the jury to find that plaintiff was injured. This. error was not cured by any other instruction, and the only instruction given as to the amount of recovery contains no reference to plaintiff's injuries. (5) Instruction C, offered by defendant, should have been given. Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 433; Dey v. U. R. Co., 140 Mo. App. 461, 120 S. W. 134; Ries v. St. Louis Transit Co., 179 Mo. 1, 77 S. W. 734; Moore v. Lindell Ry. Co., 176 Mo. 528, 75 S. W. 672; Aldrich v. St. Louis Transit Co., 101 Mo. App. 77, 74 S. W. 141; McCreery v. U. Rys. Co., 221 Mo. 18, 120 S. W. 24.

*John E. Murphy, Lyon & Swarts* and *T. J. Hoolan* for respondent.

(1) It was in effect, the supervisor, and not the motorman, who operated and had charge of the car which collided with the plaintiff. (2) There was a case for the jury and the peremptory instructions offered by defendant were rightly refused. Barry v. Transit Co., 119 Mo. App. 38; Moore v. Transit Co., 194 Mo. App. 11; Cytron v. Transit Co., 205 Mo. 720; Ellis v. Met. Ry. Co., 234 Mo. 657; Eckhart v. Transit Co., 190 Mo. 618; Murray v. Transit Co., 108 Mo. App. 510; Aldrich v. Transit Co., 101 Mo. App. 89; Deochner v. St. L., etc., Ry. Co., 200 Mo. App. 331; Haeden v. Mo. Ry. Co., 177 Mo. 469; Bunyan

v. Citizens Ry. Co., 127 Mo. 2. (3) There was no error in instruction No. 1, given at the request of the plaintiff. See cases cited under 2. (4) It was not error to refuse instructions C, D, E and F, requested by the defendant.

DAUES, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment for $5000 from which the defendant has appealed.

The petition counts on five assignments of negligence. Those relying upon primary negligence may be disregarded, and the allegation only which charges a violation of the humanitarian doctrine will be considered as the case was submitted on that issue alone, and no attempt is made by the respondent to sustain the case except under the last clear chance doctrine.

The petition charges negligence under the humanitarian doctrine as follows:

"Fourth. That at and prior to the time said car was run against and upon plaintiff, an agent or servant of the defendant with authority superior to that of the motorman in charge of said car and with power to order and direct said motorman in his handling and operation of said car, was standing at the southwest corner of the intersection of said Newstead avenue and said Finney avenue, and saw, or by the exercise of ordinary care could have seen, plaintiff walking towards said car track on which said car was approaching, and that said agent of defendant negligently and carelessly signaled to said motorman to pass said corner without stopping or slowing his said car, and continued negligently and carelessly to so signal, even after he saw, or by the exercise of ordinary care could have seen, plaintiff in a position of imminent danger and peril, and even after he saw, or in the exercise of ordinary care could have seen, that plaintiff was oblivious to any such peril, in time thereafter, by the exercise of ordinary care, with the means at hand and with safety to all persons, to have stopped said car or slackened the speed thereof, so as to have avoided injury to plaintiff, but that he continued to

so signal said motorman, and thereby ordered and caused said motorman to increase the speed of said car instead of stopping or slowing it down.''

Following this, is assignment number 5, which may be construed to charge negligence on the part of the defendant's supervisor under the humanitarian doctrine, but in so far as the questions are presented here by this appeal same is no different from the quotation given.

The answer is a general denial, with a plea of contributory negligence in that the plaintiff went upon the tracks without looking or listening for moving street cars.

The reply is a general denial.

As will be seen from the allegations of the petition above set out, a very novel and unusual introduction of the humanitarian doctrine is sought to be made. To us it seems to be an entirely new phase of the humanitarian rule.

The accident occurred at the intersection of Newstead avenue and Finney avenue in the City of St. Louis. Newstead avenue runs north and south and Finney avenue intersects same at right angles. Two street car tracks are maintained by the defendant on Finney avenue. No street car tracks are in Newstead avenue north of Finney avenue, but south of Finney avenue a single track is laid in Newstead avenue which branches into switching connections with both east and west-bound tracks on Finney avenue. A car shed is maintained by the defendant, located on Newstead avenue a short distance south of Finney avenue. At this street intersection Newstead avenue is thirty-six feet wide from curb to curb and Finney avenue is forty-one feet and one and one-fourth inches in width from curb to curb. We are concerned only with the tracks laid in Finney avenue. The north rail in this street, that is, the north rail of the west-bound track is fourteen feet, three and three-fourth inches from the north curb line. The distance between the rails in each track is four feet, ten inches, and the space between the tracks, that is, the south rail of the west-bound track to the north rail of the east-

bound track is five feet, four inches.  On the northwest corner of the intersection of these streets is a lot used by the Ranken School, and no structures or buildings are adjacent to or near the corner, but the vacant lot is enclosed by an iron picket fence and it seems the average person could well look over same and objects could be seen between the pickets of the fence.

The injury occurred shortly after five o'clock in the afternoon of October 3, 1919.  At this time two street cars were standing, one ahead of the other, immediately west of Newstead avenue on the northermost or westbound track of Finney avenue.  The last or rear car was standing so that the extreme rear of same was just west of the place where pedestrians regularly crossed Finney avenue on the west side of Newstead.  These two cars coupled together had a combined length of about ninety feet.  Plaintiff, a young woman twenty-two years of age, had left her work and was on her way to return home.  She came down on the sidewalk on the west side of Newstead avenue, proceeding southwardly to the intersection just described.  It was her intention, she says, to take a car traveling east on Finney avenue and she was making her way to catch the car which afterwards injured her. Plaintiff admits in her testimony that she saw the two stationary cars standing on the north track, west of the intersection and that when she got to a point on the sidewalk seventy-five or 100 feet north of the curb line of Finney avenue, she saw a street car coming eastward on Finney avenue approaching the intersection.  When she saw the car, from over the picket fence, she estimated that same was from 700 to 800 feet west of the intersection.  She walked steadily south, stepped off of the north sidewalk on Finney avenue into the street, passed behind the two cars standing on the north track, and just as she emerged from behind the rear of the stationary car, making one step more, she was struck by the car coming eastward on Finney avenue, knocked unconscious and very severely maimed and injured.  In passing from the sidewalk over the track, or to the third rail from the north where she was struck, she passed

within one foot of the rear of the last of the stationary west-bound cars. There is some indefiniteness with regard to plaintiff's testimony as to just how far she stepped before she was struck. However, from the physical facts it is obvious that she stepped the distance between the rails of the north line of tracks to the south line of tracks (five feet, four and one-half inches), each. of the cars overlapping the rails probably eighteen inches or two feet, and she of course stepped sufficiently far away from the stationary street cars on the north track to be struck by the approaching east-bound car. There is some conflict in the evidence as to just what part of the car struck plaintiff. There is substantial proof, however, that the left front corner struck her and that the car threw her eastward and northward in between the two line of tracks.

It is in evidence that at the southwest corner of Newstead and Finney avenues defendant's east-bound cars customarily and usually stopped to receive and discharge passengers. It is also in evidence that a half dozen persons or more were standing in the street at this time slightly west of the intersection on the south side of Finney avenue and at the place where passengers usually took board on east-bound cars. At the time of the accident, and for some time immediately prior thereto, defendant's supervisor, or road boss, J. Glatt, was standing on or very near the curb of the southwest corner of this intersection. Some witnesses say he was just off of the curb out in Newstead avenue; others place him at a lamp post which was at the very corner where the curb of Newstead and Finney joined at the southwest corner of this intersection. At any rate, this supervisor was standing at a point where he had a clear view of the approaching east-bound car, and also had a clear view of this plaintiff as she walked from the north on the west sidewalk of Newstead avenue. There is no doubt that his view was clear and unobstructed as against both the approaching car and the plaintiff. He also had a view of the persons who were standing at the corner to board the east-bound car. The supervisor, according to his

own testimony, was standing at this point, as he says, "to look out for the men and the cars on the road; look after the service." On cross-examination, and in answer to a question propounded by counsel for defendant, he said it was his duty to put the cars out to the best advantage of the defendant. It is well proven that the duties of the supervisor were to order the motormen on the different moving cars either to go ahead or stop, so as to regulate the schedule from that point and to control the traffic of defendant's cars from that place.

The motorman, Charles Karns, testified for defendant that Glatt was at the time of the accident the defendant's road supervisor, sometimes called road boss, and that "while the cars were on the street that they—I was under his jurisdiction while I was on the street;" that the supervisor had authority to tell him when to stop and when to come ahead, and that it was his duty to obey Glatt's orders and that Glatt was at that point on this occasion for the purpose of giving orders to the motormen and that he did give witness such orders.

On cross-examination, this witness was asked whether he saw Mr. Glatt motion for him to proceed with his car, to which he answered that he did and that the motion by Glatt was for the purpose of causing the witness as motorman to pass up Newstead avenue and to go on ahead with his car, that is, he was not to stop for the passengers at that place and was not to stop for the crossing but to proceed forward. He testified that he saw the people standing in the street near the tracks about forty feet west of the west crossing of Newstead avenue, but that he followed the order of the supervisor to go ahead. He stated that he shut the power off and applied the brakes as he approached Newstead avenue from the west, but that he released the brakes again when he received Glatt's orders and allowed the car to go on over Newstead avenue on its momentum. From other witnesses, however, it appears that the car actually started up on its speed when the motion was given by the road boss. While the supervisor himself denied having given the order for the car to go across Newstead

avenue, there is abundant proof in addition to the testimony of the motorman himself that Glatt, the supervisor, did give such orders. Several witnesses standing on the southwest corner near where the supervisor was standing testified, in effect, that they saw him give the orders for the car to go ahead, and that the motorman obeyed by starting his car up across Newstead avenue, and that the supervisor was standing at a point where he could clearly see the running car and that he had a clear vision to the north in the line in which plaintiff was approaching.

Plaintiff admits that she did not look again after leaving the point about 100 feet north of the intersection and that she was intent upon crossing behind the stationary street cars to board the east-bound street car which afterwards struck her. She states the situation with seeming frankness and makes no effort to deny or minimize her own carelessness in rushing over the tracks, behind the standing cars. There is no question about the size of the verdict. The main facts in the foregoing statement are corroborated by witness Feeney, the janitor of the Ranken School, who was close behind plaintiff at the time of the accident. The record is a long one, but we think this recital covers the case.

It should be borne in mind that the distance from the curb on the north side of Finney avenue to the north track was fourteen feet, three and three-quarter inches. This is the track on which the cars were standing still. The distance between the rails of the north track was four feet, ten inches, and this track was five feet, four inches from the north rail of the south track. Therefore, the distance from the curb of the north side of the street to the rail upon which the car was running and which struck this girl was almost twenty-four and one-half feet. The car overlapping the rails two feet or less, makes the distance from the north curb to the point where the collision occurred about twenty-two and one-half feet. The supervisor was standing about eighteen or nineteen feet from the spot where plaintiff was injured.

The large question presented, is whether the supervisor, under the peculiar circumstances of this case, standing at the corner curb or in the street for the purpose of directing the traffic in defendant's street cars, and seeing, or by the exercise of ordinary care could have seen that the motorman could not see the plaintiff, and it appearing that the girl was bent on her way to catch the car, and the supervisor also seeing, or by the exercise of ordinary care could have seen, that the girl could not possibly see the street car, was not duty-bound to exercise ordinary care to save this girl either by halting the car by signaling the motorman, or by exclaiming or otherwise warning plaintiff to stop as she was about to enter the danger zone. Several intricate questions arise about this phase of the case.

The supervisor, if he actually stood on the curb, was about twelve feet, nine and one-half inches from the south rail upon which the car was running, and he was only four feet, ten inches further from the north rail and being within eighteen inches or two feet from the point where this girl met with the accident. He was within easy calling distance of her from the time she left the north curb, and certainly so at the time she started behind the standing cars, and, indeed, as she was about to step to the north rail of the south track.

Now, what duty, if any, devolved upon the supervisor to look out for pedestrians, and when was this young woman about to enter the danger zone? These questions might give rise to a reasonable difference of opinion. Upon a close consideration of all the facts and circumstances attending this particular case, and giving full force and effect to the beneficient rules of the doctrine upon which plaintiff seeks to recover, we have reached the following conclusions:

It is conceivable that a traffic director for a street car system in a street of a city is not always required when giving orders to the operators of cars to come ahead over a street crossing to make observations as to crossing traffic, that is, he need not always watch between pedestrian and vehicles on the one hand and the cars on

the other. He may rely, and necessarily does often rely, upon the motorman exercising due care to see that he does not run over persons or property, even after the order is given him by the supervisor to come ahead. Police officers exercising governmental functions and traffic officers generally are constantly giving orders to come ahead and to stop traffic on busy streets, and the mere fact that an order is given to come ahead does not warrant the driver of a vehicle to assume that the traffic director has cleared the street or has judged the relative speed and distances of crossing traffic, but the driver must nevertheless exercise care to see that he does not run over and injure persons or property. But that is not the case here. In the instant case we have a motorman approaching on a car at a point where the car usually stops and takes on passengers. There were, in fact, a half dozen or more people standing near the rail to board the car, though it does not appear that the plaintiff saw or could see such persons standing there. The supervisor sees and appreciates this situation. He is standing at a point where he is in direct line with an unobstructed view of the sidewalk on the west side of Newstead avenue. The motorman is in a position where it is impossible for him to know what traffic there is on the west sidewalk of Newstead avenue because there are two stationary cars ninety feet long standing in the street which cut off the motorman's view entirely from that sidewalk. The motorman is blindfolded in so far as the condition of that sidewalk is concerned, and the supervisor knows this fact or ought to know it. He sees that this plaintiff is walking south, stepping off of the north curb of Finney avenue into the street, and he can observe that she does not slacken her pace and that she does not look in either direction but proceeds straight forward to cross the street. She does not hesitate when she gets up to the stationary street cars; but without checking her pace she still continues forward. She was about to enter the danger zone, in our opinion, as soon as she started to pass the standing street cars, as soon as she stepped in behind the cars with unslackened step or

giving evidence of checking herself.  The supervisor having given orders to the motorman to come ahead under such state of facts is exactly in the same position and must be treated exactly as if he were the motorman himself.  Therefore we view the case as though the supervisor had operated the car.  The motorman worked the car mechanically as an automaton.  The supervisor could not rely upon the motorman to carry out the order to come ahead with due regard to the persons on the sidewalk, because it was known to him that the motorman could not see anyone on the sidewalk.  He, too, knew that the plaintiff could not see the car.  Therefore, we are of the opinion that defendant's agent, or supervisor, owed the duty to this girl, herself careless of course, to use ordinary care to avert her injury by slackening the car by orders to the motorman, or to warn plaintiff of the danger by exclamations or otherwise.  He could not under the humanitarian rule, stand by and see this girl walk into a trap which he himself set in motion by his orders to a motorman who could not possibly see plaintiff's danger.

We think the evidence leaves room for a reasonable inference that had the supervisor watched this girl he could from her actions have observed that she was walking ahead to go over the tracks to get on the south side of Finney avenue to board the approaching car.  It certainly was clear that she was intending to cross the tracks to reach the south side of the street.  The whole picture as given in the record depicts the girl's obvious unmindful attitude in walking over this crossing.  One observing her, it can be inferred, could see that she was going over the tracks oblivious of the approach of the east-bound car, and certainly oblivious to the fact that the car did not stop at the crossing.  The supervisor, it may well be inferred, could have seen that plaintiff was not going to stop suddenly when she emerged from the very edge of these standing cars to look for danger, for her actions indicated otherwise.  And the inference is also allowable that the supervisor had time enough to warn her in order to save her from this accident.  One

exclamation probably would have been enough to halt her sufficiently to avoid the accident. The motorman, of course, could not from his own observation of plaintiff do anything to save her.

The proof does not show that the supervisor had time in which to stop the street car by his orders in time to avert the injury. It is not shown how far the running car was when the girl came up to the standing cars, nor where the car was as she came up to the south corner of the standing cars, nor how far the car was back when the supervisor ordered it to come ahead, though it would seem that such orders were given at or before the time the car door reached the point where the passengers stood to board same. The speed of the car was variously estimated as running from four miles upwards immediately before and at the time of the compact. The petition relies entirely upon a failure to stop the car in time to avoid the accident. That phase of the case was not proven, and for that reason this judgment cannot be permitted to stand on the present record.

However, we cannot persuade ourselves to share the view that it is proper to reverse this judgment outright. A new trial should be granted so that the petition may be amended, if plaintiff so desires, to submit the question of the supervisor's failure to warn the plaintiff herself of the danger in time to have avoided the injury. That is allowed to further justice. To cut off plaintiff's right to try her case on this theory would operate to defeat a cause of action which it should be her right to submit for determination. [Bibb v. Grady, 231 S. W. 1020, citing Riggs v. Kansas City Rys. Co., 220 S. W. 698; Rutledge v. Mo. Pac. Ry. Co., 123 Mo. 121, l. c. 140, 24 S. W. 1053; Finnegan v. Mo. Pac. Ry. Co., 244 Mo. 608, 149 S. W. 612; Chandler v. Railroad, 251 Mo. 592, l. c. 603, 158 S. W. 35.]

Accordingly the judgment is reversed and the cause remanded. *Becker, J.,* concurs. *Allen, P. J.,* concurs in the opinion, except is so far as it holds that the evidence tends to show liability as for the failure of the superintendent to warn plaintiff, as to which he expresses no opinion.