Elsie Bocklitz, Respondent, v. Rolla Wells, Receiver of United Railways Company of St. Louis, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion filed February 21, 1927.

*Corpus Juris-Cyc. References: Street Railroads, 36Cyc, p. 1631, n. 75.

*Chas. W. Bates, T. E. Francis* and *J. F. Evans* for appellant.

*John E. Murphy* and *T. J. Hoolan* for respondent.

SUTTON, C.—This is an action to recover damages for personal injuries. The trial, with a jury, resulted in a verdict in favor of the plaintiff for $5,000, and the defendant appeals.

The case has been tried three times in the circuit court. Three juries have held the defendant responsible for the plaintiff's injuries. The case was here on a former appeal, and is reported in 214 Mo. App. at page 612, 261 S. W. 955, to which reference is made for a detailed statement of the facts.

The accident in which plaintiff received the injuries for which she sues occurred at the intersection of Newstead and Finney avenues in the city of St. Louis. Newstead avenue runs north and south,

and Finney avenue runs east and west. The defendant maintains double street car tracks on Finney avenue. Westbound cars are operated on the north track and eastbound cars on the south track. Finney avenue is about thirty-six feet wide. The street car tracks are in the middle of the avenue. The gauge of the tracks—that is the distance between the rails of each of the tracks—is four feet and ten inches. The distance between the south rail of the westbound track and the north rail of the eastbound track is five feet and four inches. The overhang of the street cars operated on the tracks is eighteen inches. On the occasion of plaintiff's injury, two street cars were standing on the westbound track just west of the pedestrian crosswalk on the west side of the intersection. Plaintiff was walking south over this crosswalk. As she went upon the eastbound track she was struck and seriously injured by a street car approaching from the west. Defendant's supervisor was standing on the curb at the southwest corner of the intersection directing the movement of the street cars. A number of persons were standing near the southwest corner of the intersection, where eastbound street cars customarily receive and discharge passengers, waiting to board the approaching eastbound street car. As the car approached and was about to stop to receive the persons waiting to board the car, the supervisor signaled the motorman to proceed without stopping to receive the persons waiting to board the car. In obedience to this signal, the motorman refrained from stopping the car and allowed it to proceed over the crosswalk, and the plaintiff was struck and injured as before stated.

On the former appeal here the court stated the crucial facts and its conclusions thereon, as follows:

"In the instant case we have a motorman approaching on a car at a point where the car usually stops and takes on passengers. There were, in fact, a half dozen or more people standing near the rail to board the car, though it does not appear that the plaintiff saw or could see such persons standing there. The supervisor sees and appreciates this situation. He is standing at a point where he is in direct line with an unobstructed view of the sidewalk on the west side of Newstead avenue. The motorman is in a position where it is impossible for him to know what traffic there is on the west sidewalk of Newstead avenue because there are two stationary cars ninety feet long standing in the street which cut off the motorman's view entirely from that sidewalk. The motorman is blindfolded in so far as the condition of that sidewalk is concerned, and the supervisor knows this fact or ought to know it. He sees that this plaintiff is walking south, stepping off of the north curb of Finney avenue into the street, and he can observe that she does not slacken her pace and that she does not look in either direction but proceeds straight forward to cross the street. She does not hesitate when she gets up to the

stationary street cars; but without checking her pace she still continues forward. She was about to enter the danger zone, in our opinion, as soon as she started to pass the standing street cars, as soon as she stepped in behind the cars with unslackened step or giving evidence of checking herself. The supervisor having given orders to the motorman to come ahead under such state of facts is exactly in the same position and must be treated exactly as if he were the motorman himself. Therefore we view the case as though the supervision had operated the car. The motorman worked the car mechanically as an automaton. The supervisor could not rely upon the motorman to carry out the order to come ahead with due regard to the persons on the sidewalk, because it was known to him that the motorman could not see anyone on the sidewalk. He, too, knew that the plaintiff could not see the car. Therefore, we are of the opinion that defendant's agent, or supervisor, owed the duty to this girl, herself careless of course, to use ordinary care to avert her injury by slackening the car by orders to the motorman, or to warn plaintiff of the danger by exclamations or otherwise. He could not under the humanitarian rule, stand by and see this girl walk into a trap which he himself set in motion by his orders to a motorman who could not possibly see plaintiff's danger.

''We think the evidence leaves room for a reasonable inference that had the supervisor watched this girl he could from her actions have observed that she was walking ahead to go over the tracks to get on the south side of Finney avenue to board the approaching car. It certainly was clear that she was intending to cross the tracks to reach the south side of the street. The whole picture as given in the record depicts the girl's obvious unmindful attitude in walking over this crossing. One observing her, it can be inferred, could see that she was going over the tracks oblivious of the approach of the eastbound car, and certainly oblivious to the fact that the car did not stop at the crossing. The supervisor, it may well be inferred, could have seen that plaintiff was not going to stop suddenly when she emerged from the very edge of these standing cars to look for danger, for her actions indicated otherwise. And the inference is also allowable that the supervisor had time enough to warn her in order to save her from this accident. One exclamation probably would have been enough to halt her sufficiently to avoid the accident. The motorman, of course, could not from his own observation of plaintiff do anything to save her.

''The proof does not show that the supervisor had time in which to stop the street car by his orders in time to avert the injury. It is not shown how far the running car was when the girl came up to the standing cars, nor where the car was as she came up to the south corner of the standing cars, nor how far the car was back when the supervisor ordered it to come ahead, though it would seem that such

orders were given at or before the time the car door reached the point where the passengers stood to board same. The speed of the car was variously estimated as running from four miles upwards immediately before and at the time of the compact. The petition relies entirely upon a failure to stop the car in time to avoid the accident. That phase of the case was not proven, and for that reason this judgment cannot be permitted to stand on the present record.

"However, we cannot persuade ourselves to share the view that it is proper to reverse this judgment outright. A new·trial should be granted so that the petition may be amended, if plaintiff so desires, to submit the question of the supervisor's failure to warn the plaintiff herself of the danger in time to have avoided the injury. That is allowed to further justice. To cut off plaintiff's right to try her case on this theory would operate to defeat a cause of action which it should be her right to submit for determination."

The judgment was accordingly reversed and the cause remanded. Thereupon plaintiff amended her petition agreeably to the views of this court. The retrial of the case resulted in a verdict and judgment for plaintiff, and the case comes here again on appeal, as before stated.

On this appeal, as on the former, defendant assigns error upon the refusal of his instruction in the nature of a demurrer to the evidence. In support of this assignment the defendant says that the evidence was insufficient to warrant the predication of liability on the part of the defendant, either upon the failure of the supervisor to warn plaintiff of the approach of the street car,·or upon his failure to stop the street car by appropriate signal to the motorman. Instruction No. 1 given on behalf of the plaintiff submitted the case to the jury upon both these theories conjunctively. We can see no reason why the court, on the facts as disclosed by the present record, should alter its views as expressed upon the former appeal with respect to defendant's liability for failure to warn the plaintiff. The facts as disclosed by the present record are not materially different from the facts appearing upon the former appeal, except in that there is evidence in the present record tending to show that the street car as it approached the crosswalk was moving at a speed of about two to three miles per hour, that plaintiff was moving at about the same speed, and that the car could have been stopped within a distance of three feet. We think these facts warranted the predication of liability on the failure of the supervisor to stop the car by signaling the motorman.

We cannot escape the conclusion on the facts shown by this record that the jury were well warranted in finding that if the defendant's supervisor had exercised the diligence required of him under the humanitarian rule the unfortunate plaintiff would have been saved from injury.

The assignment of error made upon the giving of plaintiff's instruction No. 1 is necessarily ruled against defendant by what has already been said.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.*, and *Becker, J.*, concur; *Nipper, J.*, dissents.